[Crim. No. 320.   First Appellate District.—August 5, 1911.]

## THE PEOPLE, Respondent, v. L. E. SPENCER, Appellant.

CRIMINAL LAW—DRAWING AND ALTERING BANK DRAFT WITHOUT FUNDS —IMMATERIAL VARIANCE IN NAME OF BANK.—Under an information charging the crime of drawing a draft upon a bank, without sufficient funds or credit to meet the same, which resulted in its dishonor on presentation, it is held that a variance between the name of the bank described in the information as the "National Bank of Commerce, doing business at the city of Seattle, state of Washington," and the proof showing that the draft was in fact drawn on the "National Bank of Commerce of Seattle," is not material or fatal.

ID.—EVIDENCE—PROOF OF CORPUS DELICTI—CONFESSIONS AND ADMISSIONS JUSTIFIED.—The *corpus delicti* of the offense was sufficiently proved to justify the evidence of the confessions and admissions of the defendant, by proof that defendant represented that he had $20,000 on deposit in the National Bank of Commerce of Seattle, Washington, and that he expected to have there in a few days $75,000 more, taken in connection with the fact that the draft drawn in favor of the prosecuting witness for $500 on said bank was dishonored for want of funds a few days later.

ID.—DEGREE OF PROOF OF CORPUS DELICTI.—Although all the elements of the crime charged must appear in the proof of the *corpus delicti,* it is not necessary that the evidence of the criminal act should be of the conclusive character required for conviction on the trial, in order to justify the admission of defendant's confessions.

ID.—ABSENCE OF CREDIT AT BANK SUFFICIENTLY SHOWN BY DISHONOR OF SMALL DRAFT.—The absence of funds of the defendant at the bank with which to meet the draft, and its dishonor, taken with his false representations as to funds on deposit, was sufficient to warrant the jury in drawing the inference that defendant did not have sufficient credit with the bank to meet the draft, and was therefore sufficient to warrant the confessions of the defendant without further proof of the *corpus delicti.*

ID.—FAILURE OF COURT TO READ STATUTORY DEFINITION OF CREDIT—ABSENCE OF REQUEST FOR INSTRUCTION.—Where the defendant failed to ask for any instruction as to the definition of credit embodied in the statute, he cannot be heard to complain of the failure of the court to read the same to the jury.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Wm. P. Lawlor, Judge.

The facts are stated in the opinion of the court.

James M. Hanley, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, Deputy Attorney General, for Respondent.

KERRIGAN, J.—The defendant was convicted of the crime of drawing and uttering a bank check with the intent thereby to defraud Watson, Pond & Riddle, a corporation.

The prosecution was had under section 476a of the Penal Code, which section reads as follows:

"Every person who willfully, with intent to defraud, makes or draws, or utters, or delivers to another person any check or draft on a bank . . . , knowing at the time of such making, drawing, uttering or delivery that he has not sufficient funds in or credit with such bank, . . . to meet such check or draft in full upon its presentation, is punishable by imprisonment in the state prison. . . . The word 'credit' as used herein shall be construed to be an arrangement or understanding with the bank . . . for the payment of such check or draft."

Briefly the facts of the case are these: The defendant represented to Watson, Pond & Riddle that he had $20,000 on deposit in the National Bank of Commerce of Seattle, Washington; that he expected to have there in a few days $75,000 more; that he was also the owner of rent producing properties in Seattle, and was related to some of the officials of said bank. On the strength of these pretenses, Watson, Pond & Riddle, on April 28, 1910, as a matter of accommodation, gave the defendant its check for $725, and took in exchange therefor his sight draft on said bank for a like amount. When this draft was presented—which was done as soon as practicable—payment was refused on account of lack of funds.

The evidence tends to sustain the theory of the prosecution that the defendant had put in operation a scheme by means of which he sought first to work his way into the good graces of certain San Francisco business men by a number of fair exchanges of his drafts for their checks, and then later, if he succeeded in gaining their confidence, to defraud some

of them of large sums of money. However this may be, from a number of transactions similar to this one, each comparatively small in amount, the district attorney selected this, the largest one, on which to base the prosecution. In due time the case came on for trial, evidence was introduced by the people, and on behalf of the defendant witnesses testified as to his good reputation, but he did not himself take the stand. Upon his conviction a motion for a new trial was made and denied, and the defendant was sentenced to imprisonment in the state prison for a term of three years, whereupon he took this appeal, which is from the judgment.

The defendant relies for a reversal of the judgment on three points—(1) that there is a variance between the allegations of the information and the proof; (2) That the confessions and admissions were admitted before the *corpus delicti* was established; and (3) That the court erred in giving an instruction to the jury defining the offense charged.

(1) As to the question of variance, the information charges that the draft in question was drawn on the "National Bank of Commerce, doing business in the city of Seattle, state of Washington," and the evidence shows that it was in fact drawn on the National Bank of Commerce of Seattle. Defendant claims that such a variance is fatal. But the evidence also shows that there is no other National Bank of Commerce in Seattle, or any other bank there of similar name, and that this one is called by and does business under both names. We therefore hold that defendant's position on this point cannot be maintained. Such a variance would not be regarded as material in a criminal prosecution even in the name of the defendant (*People* v. *Oreileus,* 79 Cal. 178, [21 Pac. 724]), nor in that of the injured party (*People* v. *Hughes,* 29 Cal. 262). In the last case, under an indictment charging arson for the purpose of defrauding the Hartford Insurance Company, evidence that the name of the company was the Hartford Fire Insurance Company did not constitute a fatal variance. (See, also, *People* v. *Leong Quong,* 60 Cal. 107; *People* v. *Armstrong,* 114 Cal. 570, 573, [46 Pac. 611].)

(2) As to the second point, defendant contends that, independently of his extrajudicial statements and confessions the evidence fails to establish the *corpus delicti,* in that it

does not show that he had not sufficient credit at the bank, and that therefore the court committed error in admitting such confessions and statements. The rule on the subject is stated in *People* v. *Simonsen,* 107 Cal. 345, [40 Pac. 440], as follows: "The *corpus delicti* involves the elements of crime; and, in order to prove it, all of the elements of the crime must be made to appear before defendant's confessions or admissions are admissible for any purpose; and they cannot be used to establish any necessary element for the commission of the crime."

But here the testimony showed that the defendant represented that he had on deposit in the Seattle bank $20,000; that within a few days he expected $75,000 more; yet when his draft was presented for payment a few days later he had on deposit approximately only $200. These facts, together with the circumstance that the check was dishonored, were quite sufficient to warrant the jury in drawing the inference that the defendant did not have sufficient credit with the bank to meet the draft, and consequently justified the court in admitting proof of the extrajudicial statements of the defendant without further evidence to establish the *corpus delicti.* The authorities support this view. In *People* v. *Montgomery,* 15 Cal. App. 315, [114 Pac. 792], the defendant was charged with an assault with a deadly weapon with intent to kill; and in order to permit the verdict to stand it was necessary that the proof in the case should show that the gun with which the assault was made was loaded. There was no correct proof that the gun was loaded, but the defendant, after quarreling with the prosecuting witness, left the premises, and soon thereafter returned with the gun, which he pointed at him, threatening to kill him. These circumstances, with the fact that he persisted in remaining about the premises and threatened others, were held sufficient to justify the jury in drawing the inference that the gun was loaded.

In the cases of *People* v. *Eppinger,* 105 Cal. 36, [38 Pac. 538], and *People* v. *Terrill,* 133 Cal. 120, [65 Pac. 303], it was held that the absence of a certain name from the city directory was sufficient in the case of forgery to show that it was the name of a fictitious person.

In *Commonwealth* v. *Locke,* 114 Mass. 294, the court said: "The burden of proving affirmatively that the sale or in-

tended sale was in violation of law, by negativing the authority or license of the person by whom it was made or intended, was placed upon the government; but the court rightly ruled that it need not be proved by direct evidence, but might be inferred from circumstances.''

On this question of the degree of proof necessary to establish the *corpus delicti* before permitting proof of the defendant's extrajudicial statements or confessions, we think the case of *People* v. *Jones,* 123 Cal. 65, [55 Pac. 698], is particularly in point. There the evidence showed that four detached buildings were burned; and the court held that this fact tended to show that the buildings were separately fired, and therefore sufficiently established the incendiary character of the fire to admit evidence of the confession. The court described this evidence as weak and unsatisfactory, and in the course of the opinion said: ''A distinction must be taken between the evidence which upon the whole case would justify a conviction, and that degree of proof of criminal agency in the burning of the buildings for the purpose of letting in evidence of the confessions or admissions of the defendant. To justify a conviction the jury must be satisfied beyond a reasonable doubt of the existence of every fact necessary to constitute the offense and to identify the defendant as the perpetrator; but it is not necessary that the evidence of the criminal act should be of that conclusive character in order to justify the admission of the defendant's confessions.''

(3) Finally the defendant insists that the court erred in not reading the whole of section 476a of the Penal Code. The court read all of that section except the last part which defines the word ''credit.'' In view of the fact that throughout the trial in various ways the defendant contended that there was no evidence sufficient to establish the lack of credit with the bank, it would seem that the court should have read not a part of the section but the whole of it. (*People* v. *Tapia,* 131 Cal. 647, [63 Pac. 1001].) But the jury must have understood the meaning of a word of such common use. Moreover the record discloses that the district attorney read the section to the jury, and in such a way as to call their special attention to the last clause thereof. In any

event, the defendant requested no instruction defining the word "credit"; hence he cannot be heard to complain.

The judgment is affirmed.

Hall, J., and Lennon, P. J., concurred.