[Crim. No. 1866.   In Bank.—February 19, 1915.]

# THE PEOPLE, Respondent, v. JESSE C. VERTREES, Appellant.

CRIMINAL LAW—CORPUS DELICTI—MERE EXTRA-JUDICIAL CONFESSION WILL NOT WARRANT CONVICTION.—No conviction in a criminal prosecution may be had upon the extra-judicial confession of a defendant unless such confession be corroborated by proof *aliunde* of the *corpus delicti*, and while slight proof of the *corpus delicti* has in many cases been properly held a sufficient basis for the admission of such confessions, it is nevertheless true that the confessions and admissions of the defendant cannot be used to establish any necessary element for the commmission of the crime.

ID.—BURGLARY OF DOCUMENTS FROM OFFICE OF DISTRICT ATTORNEY—INSUFFICIENT PROOF OF CORPUS DELICTI.—In this prosecution for burglary, based on the theory that the defendant in the night-time, entered the office of the district attorney of Glenn County with intent to commit larceny, and that he stole and took away from said office certain documents which had been used before the grand jury during the proceedings which led to the indictment of a third person, it is held, by Melvin, J., and Lorigan, J., that the evidence, aside from the alleged confession of the defendant, was insufficient to prove the *corpus delicti*, and by Angellotti, C. J., Sloss, J., and Henshaw, J., that while there was sufficient evidence of the *corpus delicti* to warrant the admission of such alleged confession, the errors that occurred in the admission of other evidence necessitated a reversal, and that in view of the circumstances of the case, section 4½ of article VI of the constitution did not warrant an affirmance.

ID.—EVIDENCE WITHOUT PREJUDICE—FACTS ALREADY IN EVIDENCE.—On the trial of such burglary charge, the admission in evidence of the indictment in connection with which the alleged stolen documents had been used, was without prejudice, where it was already in proof that such documents had been used as evidence before the grand jury that returned it.

ID.—IMPEACHMENT OF OWN WITNESS BY PROSECUTION.—It was improper for the prosecution, on direct examination of the person charged in such indictment, when he was called as a witness for the people, to ask him if he were the same person who had been tried on certain dates, and if he were the person who had been indicted at a certain time. Such questions could only have been propounded for the purpose of impeachment, and even if the witness may have been hostile to the prosecution, it was not within the rights of the district attorney to call him merely for the purpose of throwing discredit upon him.

ID.—CHECK GIVEN TO DEFENDANT BY PERSON UNDER INDICTMENT.—It was error, on such trial, to permit witnesses for the prosecution, who testified as to the defendant's confession, to further testify that at a time prior to the confession and after the disappearance of the papers, the defendant showed them a check apparently drawn in his favor by the person charged in the indictment, where no further attempt was made by the prosecution to connect the check with the crime for which the defendant was tried.

ID.—CROSS-EXAMINATION OF WITNESS FOR DEFENSE—ADMISSION OF BIAS —FACTS TENDING TO SHOW DIFFERENT CRIME.—After the prosecution, on the cross-examination of a witness for the defense, had obtained from him an admission of his interest in the acquittal of the defendant, it could not, under the guise of developing bias, further interrogate the witness to the extent of eliciting facts tending to prove a crime committed by the witness but having no possible connection for the offense of burglary for which the latter was on trial.

ID.—TIME OF ENTERING BUILDING—BURGLARY OF FIRST DEGREE.—The time of entering a building is one of the essential elements of the crime of burglary of the first degree, and that constituent of the offense may not be proved by the confession of the defendant alone.

ID.—INSTRUCTION—WITNESS FALSE IN ONE PART OF TESTIMONY—DUTY TO DISTRUST.—An instruction in a criminal case to the effect that "If any witness examined before you has willfully sworn falsely in the case to any material matter it is your *duty* to distrust his entire evidence," is disapproved.

APPEAL from a judgment of the Superior Court of Glenn County and from an order denying a new trial. William M. Finch, Judge.

The facts are stated in the opinion of the court.

Ben F. Geis, and Durand F. Geis, for Appellant.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General, and Claude F. Purkitt, District Attorney, for Respondent.

MELVIN, J.—Defendant was convicted of the crime of burglary of the first degree. He was sentenced to imprisonment for the term of ten years.

It was the theory of the prosecution that the defendant, on or about July 21, 1912, entered the office of the district attorney of Glenn County with intent to commit larceny and that he stole and took away from said office certain letters, a hotel

register, and a page which had been torn from the register of another hotel. These articles had been used before the grand jury during the proceedings which led to the indictment of one Otto Klemmer on the charge of contributing to the dependency of a minor. Defendant appeals from the judgment and from the order denying his motion for a new trial, urging as reasons for reversal: 1. That there was no proof of the *corpus delicti* aside from the confessions of the defendant; 2. That the court committed error in certain rulings on the admissibility of testimony; and, 3. That there was no evidence showing the commission of the alleged offense in the night-time, and hence no proof justifying a verdict of burglary of the first degree.

The district attorney testified that after the indictment of Otto Klemmer he took the exhibits with him to his office. The letters were placed in his files and the hotel register containing folded up within it, the leaf from the other hotel register was put in a drawer in his desk. He saw the exhibits at various times until about two weeks before he discovered that they were missing. On or about July 21, 1912, he had occasion to examine the exhibits and then found that they were not in his office. He and his stenographer made careful search and in the course of the investigation he found that the screen to the window of the room in which the papers had been filed, was cut. About three feet below the window, outside of the building, was the surface or top of a cellar door. The district attorney thus described the condition of the screen: "There was a steel post that went through the screen into the hole in the wall. At this point here it was, which was about nine inches about, above the lower east corner of the window and one that went through the opposite side, the west side of the window, and also another that went through on the east side of the screen here, being the same kind of screen as this is in size, but old. (Referring to screen in courthouse window back of witness chair.) The steel post that went through this part of the window had a mark on it, corrugated marks, running lengthwise the same way as the post did, of bright, new, freshly put on there marks, and this side of the window had been forcibly torn out, splitting the wood. The screen had also been torn loose from the jamb of the window on this side of the top." Witness also stated that he had seen tracks of a man's shoes outside of the build-

ing and passing under one of the windows of his office. These
tracks were in the freshly worked ground between the build-
ing and the beaten path. He had observed these tracks a few
days before he missed the exhibits from his office, his attention
having been directed thereto by the janitor. This testi-
mony, which was corroborated by other witnesses, who saw the
broken screen and the tracks under the window, related all
of the facts upon which the prosecution sought to establish
the *corpus delicti* aside from the alleged confession of the de-
fendant. On the witness-stand the defendant denied that he
had entered the office of the district attorney or that he had
made any confession. Witness Noble related two alleged con-
fessions and witness Wieland testified that he overheard one
of them. Noble stated that between the first and the second
conversations with the defendant he went to the district at-
torney and told that officer that he could "produce the man
that committed the crime or said he had," but did not mention
any name. After the second conversation with defendant,
according to Noble's testimony, he told the district attorney
the name of the man who had made the confessions. The
first confession, as related by Noble, was as follows: "Mr.
Vertrees told me that he entered the office of the district at-
torney Purkitt, and secured some papers, took some papers
that was evidence pertaining to the Otto Klemmer case; that
he entered through the window and he got the papers; some
were on file and some were in the north drawer of the desk,
and he left the office in company with Mr. Lenus Klemmer;
went to the Sacramento River and burned the papers." The
conversation, he said occurred in the yard of the premises
where he and Vertrees lived. The second conversation, ac-
cording to Noble, took place near the back door of the house.
To quote Noble's own words: "I asked him how he got in
the office and got the papers without being detected without
a light in the small hours of the morning, and he said he
entered the window and got the papers, some of them were
on file and some were in the north end of the drawer and I
believe he said he had a flashlight and I am not positive
about that. I asked him about the light and whether he said
he turned on the light or had a flashlight, I am not positive, but
he told me then that he got them and where they were and how
he left with him." Wieland said that he overheard a conver-
sation between Vertrees and Noble as they stood near the back

door of the house. Witness was in a shed connected with
the house, and was concealed from the view of Vertrees. Re-
garding this conversation Wieland said: "I can give the sub-
stance of it, not in any exact words or anything, but Ver-
trees told Noble that he had come to the court house with
Lenus Klemmer and entered the window of the district at-
torney's office and took the evidence in the Otto Klemmer
case while Lenus Klemmer stood guard with the machine.
. . . They took the papers in the machine and took them out
the Jacinto Road and burned them." The janitor and the
stenographer connected with the district attorney's office tes-
tified that neither of them had taken away the exhibits and
that neither of them knew anything about the disappearance
of those articles.

It is the settled law that no conviction may be had upon
the extra-judicial confession of a defendant unless such con-
fession be corroborated by proof *aliunde* of the *corpus delicti,*
and while slight proof of the *corpus delicti* has in many cases
been properly held a sufficient basis for the admission of such
confessions, it is nevertheless true that the confessions and
admissions of the defendant cannot be used to establish any
necessary element for the commission of the crime. (*People*
v. *Simonsen,* 107 Cal. 346, [40 Pac. 440]; *People* v. *Jones,*
123 Cal. 68, [55 Pac. 698]; *People* v. *Tapia,* 131 Cal. 651,
[63 Pac. 1001]; *People* v. *Frank,* 2 Cal. App. 285, [83 Pac.
578]; *People* v. *Frey,* 165 Cal. 144, [131 Pac. 127].) Apply-
ing these rules with all liberality we cannot say that the
*corpus delicti* was proven without the alleged confession of
Vertrees. The district attorney's office is a public one and
the fact that papers disappeared from it would not prove that
burglary had been committed. The circumstance that a win-
dow screen had been broken did not establish either an un-
lawful entry or the stealing of the exhibits by the person
making such entry. It was not shown that the papers and
the hotel register were in the office at the time the window
screen was broken or at the time when the tracks appeared
on the soft earth outside of the office. Undoubtedly the
*corpus delicti* may be proven by circumstantial evidence, but
the circumstances related by the district attorney and the
other witnesses who corroborate his statements utterly fail
to establish the crime of burglary. The two elements of
*corpus delicti* are: "1. Certain facts forming its basis; and,

2. The existence of criminal agency as the cause of them."
(*People* v. *Jones,* 123 Cal. 68, [55 Pac. 698].) Both of these
elements were lacking until they were supplied by Noble and
Wieland, who repeated alleged conversations with Vertrees.
Without the details given in their testimony no one could posi-
tively say that burglary had been committed by some one
entering the office of the district attorney with intent to com-
mit larceny. While the facts related by the district attorney
would properly arouse his suspicions, they would not amount
to circumstantial proof of the crime charged. It has been
held in this state that although all of the elements of the
crime charged must appear in the proof of the *corpus delicti,*
it is not necessary that the evidence of the criminal act should
be of the conclusive character required for conviction before
the confession may be admitted in evidence. (*People* v.
*Spencer,* 16 Cal. App. 759, [117 Pac. 1039]; *People* v. *Row-
land,* 12 Cal. App. 10, [106 Pac. 428].) But no authority
has been cited which justifies the use of the confession itself
to prove one or more of the necessary elements in the com-
mission of the crime that would be wholly lacking without
such confession.

We see no reason for extending a rule based on reason and
experience and intended to protect a defendant from the
possibility of fabricated testimony out of which might be
wrongfully established both the crime and its perpetrator.
Confessions themselves as presented in court have been de-
scribed by leading text-writers as the sort of testimony cal-
culated to arouse and stimulate suspicions. (Wharton on
Criminal Evidence (10th ed.), sec. 635; Wigmore on Evidence,
sec. 866.) We should therefore preserve the safeguards sur-
rounding their lawful introduction. It follows that the judg-
ment must be reversed for the reasons above stated.

The defendant testified in his own behalf. On cross-exam-
ination he was asked if he had ever been convicted of a felony.
He replied in the affirmative, saying that the crime of which
he had been convicted was an attempt at burglary. He denied
that he had ever been convicted of any other felony and the
district attorney was permitted, over the objection of defend-
ant's counsel, to show by the record of a trial in which
Vertrees had appeared as a witness that he had admitted a
previous conviction of the crime of manslaughter, committed
in the state of Oregon. The prosecution seeks to justify this

course under section 2052 of the Code of Civil Procedure, while defendant's counsel insist that the fact of prior conviction may only be shown by the admission of the witness or the production of the record (Code Civ. Proc., sec. 2051), and that admissions made by him at other times and places touching the matter of his former conviction may not be shown in lieu of the written record of his conviction and imprisonment. As the district attorney will have ample time before the next trial to produce the record of conviction, if one exists, we need not discuss this question. If the record is not in existence of course the prosecuting officer will not ask the witness anything about conviction of a felony in Oregon.

Against the objections of defendant's counsel the indictment against Otto Klemmer was introduced in evidence. Defendant was not injured by the introduction of this piece of evidence as it was already in proof that such an indictment had been returned and that the missing exhibits had been used as evidence before the grand jury that returned it. It was improper for the prosecuting officer to ask Otto Klemmer on direct examination when he was called as a witness for the people if he (witness) were the same person who had been tried under the name of Otto Klemmer on certain dates and if he were the person who had been indicted at a certain time. Such questions could only have been propounded for the purpose of impeachment and even granting that the witness may have been hostile to the prosecution it was not within the rights of the district attorney to call him merely for the purpose of throwing discredit upon him. When the questions were asked the witness had uttered no word of testimony showing any bias or prejudice toward the commonwealth's case.

The witnesses Noble and Wieland testified that during a talk with the defendant the latter reached in his pocket, pulled out a paper and said, "Gee, here is something I thought I had lost or spent." The paper, witnesses said, was a check on the Glenn County Bank, apparently drawn by Otto Klemmer for two hundred and seventy-five dollars, and made payable to Jesse O. Vertrees. The time of the conversation and the exhibiting of the check was fixed as being before Vertrees made confession of the burglary. There was no further showing with reference to this check, except that Otto Klem-

mer was permitted to prove by his checkbook and his canceled checks that no issuance of any check to Vertrees appeared therefrom. The prosecution made no connection between this check and the crime for which Vertrees was on trial. The learned attorney-general defends the introduction of this testimony on the ground that it tends to exhibit the motive of the defendant for the commission of the alleged burglary. As there was no showing and no attempt to prove that the check was given for any particular purpose and as its alleged existence was attributed to a time long after the disappearance of the papers we fail to see its relevancy as showing motive or for any other purpose.

Lenus Klemmer was jointly indicted with the defendant Vertrees. He was mentioned in the testimony of the witnesses Noble and Wieland as the person inculpated by Vertrees's confession in the crime of burglariously entering the office of the district attorney. He took the stand and testified that he had not participated in nor had he been cognizant of any burglary. On cross-examination he admitted that he was interested in the case, being charged jointly with Vertrees. Later, in the cross-examination of this witness the court permitted the district attorney to ask him certain questions about a forged check not, as the court said, for the purpose of proving that the defendant Vertrees had committed forgery, but to show the bias of the witness. The prosecution on cross-examination developed the fact that Lenus Klemmer had become possessed of a certain paper purporting to be a check drawn by Otto Klemmer but really, as Vertrees confessed, written by him. This check was for one hundred dollars. The grand jury was investigating the matter of that forgery —a fact, as witness admitted, which was known to him. He was then asked the following question and after the overruling of an objection gave the appended answer. "I will ask you then, Mr. Klemmer, if you at that time advised your son, Otto, concerning the prosecution of Mr. Vertrees about that check, referring to the matter then before the grand jury? . . . A. I told him it was his business and not mine, he could do as he pleased." Witness also stated that he knew of an arrangement whereby Vertrees borrowed the money to make the check good and that he agreed to pay over a small amount of this indebtedness each week to the creditor out of the wages of Vertrees who was employed by the witness. The

prosecution insists that the cross-examination of Lenus Klemmer comes within the exception to the general rule that proof of other offenses is not permissible in the trial of a person charged with crime. But this cross-examination does not come within the doctrine which admits evidence of other crimes to prove the *motive* of the defendant. Such cases as *People* v. *O'Bryan,* 165 Cal. 58, [130 Pac. 1042]; *People* v. *Walters,* 98 Cal. 141, [32 Pac. 864], and others, cited in that behalf have no application to the facts of this case. The general rule is that the prosecution is not only forbidden to prove another crime but may not introduce evidence designed merely to degrade and prejudice the defendant before the jury. (*People* v. *Glass,* 158 Cal. 655, [112 Pac. 281].) Nor may a cross-examiner do indirectly that which the law prohibits him from doing directly. (*People* v. *Vidal,* 121 Cal. 222, [53 Pac. 558].) Having elicited the fact that Lenus Klemmer was interested in the acquittal of Vertrees he was not then privileged to go further and under the guise of developing bias elicit the story of a transaction, the details of which must have been injurious to the defendant, but could have no connection with the commission of the burglary charged in the indictment. In Jones's Commentaries on Evidence (vol. 5, sec. 829, p. 151), the rule is thus stated: "The rule has several times been declared in judicial decisions that, where the cross-examiner ascertains from the admission of the witness that he is prejudiced against or entertains a feeling of hostility toward the adverse party, the inquiry cannot be pressed further to show the cause or ground of such hostility, or the details of the facts showing bias." *People* v. *Goldenson,* 76 Cal. 328, (349), [19 Pac. 161], is cited by the learned author in support of the text. In *People* v. *Breen,* 130 Cal. 78, [62 Pac. 408], a witness for the prosecution was president of the company that employed a detective to ascertain the origin of the fire which, according to the indictment, was set by the defendant. Defendant's counsel asked witness how much had been paid to the detective for his services and this court approved a ruling sustaining an objection to the question. Applying this principle to the case at bar we must hold that after the prosecution had obtained from the witness an admission of his interest in the acquittal of the defendant, he could not be interrogated additionally to the extent of eliciting facts tending to prove a crime committed by Vertrees but

having no possible connection with the offense of burglary for which the latter was on trial.

The only testimony of burglary of the first degree is found in the statement of Noble which is quoted herein. The time of entering a building is one of the essential elements of the crime of burglary of the first degree and that constituent of the offense may not be proved by the confession of the defendant alone.

Appellant complains of the giving of this instruction: "If any witness examined before you has willfully sworn falsely in this case to any material matter, it is your *duty* to distrust his entire evidence." This form of the instruction was disapproved in *People* v. *Delucchi,* 17 Cal. App. 103, [118 Pac. 935], and if this case shall be tried again we would suggest an adherence to the form which has been approved.

The judgment and order are reversed.

Lorigan, J., concurred.

ANGELLOTTI, C. J., concurring.—I concur in the judgment. I am of the opinion that there was sufficient evidence of the *corpus delicti* to warrant the admission in evidence of the alleged confessions of defendant. But I have no doubt on the proposition that the lower court erred in its action relative to the cross-examination of defendant in regard to alleged statements made by him on other occasions as to prior convictions, and in allowing proof to contradict his testimony on that subject. Furthermore, it is clear to me that the court erred in allowing the cross-examination of Lenus Klemmer on the matter of the one hundred dollar check, a matter not touched upon in his direct examination, and one altogether foreign to any issue in this case. The claim that this testimony was admissible to show interest and bias on the part of the witness appears to me, under the circumstances of this case, to be absolutely without foundation. Whatever may be said as to the question of prejudicial effect of the testimony tending to show statements of defendant admitting prior convictions other than the one he had acknowledged, there is no question in my mind as to the prejudicial effect of the testimony given by Lenus Klemmer on cross-examination relative to the one hundred dollar check. An examination of the record in this case has satisfied me that the case is not one

where it may fairly be said that a verdict of guilty would or ought to have been rendered in the absence of this testimony. So far as I can see, there is nothing substantial to connect defendant with the commission of the alleged offense except his alleged confessions, the making of which was denied by him, and the testimony as to which, to say the least, is not at all satisfactory. The testimony of one of the two witnesses who testified as to the alleged confession, as to the possession by defendant of a check for two hundred and seventy-five dollars, signed by Otto Klemmer, was almost conclusively shown to be unfounded in fact. In view of the circumstances of this case, as shown by the record, I do not think that section 4½ of article VI of the constitution warrants an affirmance.

It may be added that the foundation for a conclusion that if a burglary was committed, it was burglary of the first degree, is exceedingly slight, and it is extremely doubtful if it is sufficient. I am not prepared to assent to a conclusion that such a matter may not be shown by the confession of the defendant alone.

Sloss J., and Henshaw, J., concurred.

SHAW, J., dissenting.—I dissent. I am of the opinion that the cross-examination of Lenus Klemmer concerning the one hundred dollar check was allowable to show the interest he was taking in the case, and to determine the degree of credit to be given to his testimony favorable to the defendant.

With regard to the other rulings complained of, I do not consider them sufficiently prejudicial to require a reversal, or to show that a miscarriage of justice has resulted therefrom, even if they were erroneous, which I do not concede as to all of them.

Lawlor, J., concurred.