[Crim. No. 607.   First Appellate District.—January 12, 1916.]

## THE PEOPLE, Respondent, v. ROY WAGNER, Appellant.

CRIMINAL LAW—MURDER—EVIDENCE—PROOF OF CORPUS DELICTI—AD-
MISSION.—In a prosecution for murder proof of the *corpus delicti*
of the conclusive and convincing character required to support a
conviction of the crime charged is not a prerequisite to the reception
in evidence of the extra-judicial statements of the defendant that
he had killed the deceased, but *prima facie* proof is sufficient for
that purpose.

ID.—SUFFICIENCY OF PROOF OF CORPUS DELICTI.—In this prosecution of
a son for the murder of his father, it is held that the evidence was
sufficient *prima facie* to establish the *corpus delicti* as the founda-
tion for the admission in evidence of the extra-judicial statements
of the defendant that he caused the death of the deceased.

ID.—ADMISSIONS OF DEFENDANT—ORDER OF PROOF.—In the absence of
a showing of prejudice, there is no error in admitting in evidence
the defendant's extra-judicial statements prior to the proof of the
*corpus delicti.*

ID.—RESULT OF EXPERIMENTS—WHEN INADMISSIBLE.—In a prosecution
for murder it is prejudicial error to permit the state, over the objec-
tion of the defendant, to show the result of certain experiments
made by the district attorney and peace officers with shots fired
from the gun which killed the deceased at and into cardboards and
blocks of wood which were intended to represent the deceased, for
the purpose of rebutting the statements of the defendant that the
killing was accidental, in the absence of a showing that the experi-
ments were made under circumstances and conditions which were
the same, or substantially the same, as those which existed when
the killing occurred.

ID.—EVIDENCE OF EXPERIMENTS — DISCRETION—PRELIMINARY PROOF.—
While the admission of evidence showing the results of experiments
is largely within the discretion of the trial court, nevertheless the
admission of such evidence is regulated and must be controlled by
the well-settled rule that it must be first shown that the experiments
relied upon were made under conditions and circumstances which
were essentially the same as those which existed when the alleged
occurrence took place.

ID.—INSTRUCTION—IMMATERIALITY OF EVIDENCE OF EXPERIMENTS.—An
instruction declaring that the evidence of the results of experiments
should not be "considered material and effective nor conclusive, but
as a mere circumstance to be considered in connection with other
evidence in the case," is erroneous in the particular that it declares
that evidence of the results of experiments was neither material nor

effective, and should not be given, notwithstanding it correctly stated the law to the extent that such evidence was to be considered by the jury with the other evidence in the case.

ID.—CONFLICTING RESULTS OF EXPERIMENTS — DISREGARD BY JURY— ERRONEOUS INSTRUCTION.—An instruction to the effect that if the evidence of the respective experiments made by the prosecution and defendant under similar circumstances showed different results, then the result of each experiment should be disregarded by the jury, is erroneous, as such a situation amounts to no more than a conflict of evidence, which should be left to the jury for decision.

ID.—EXPERIMENTS UNDER DIFFERENT CONDITIONS—DISREGARD OF EVIDENCE—PROPER INSTRUCTION.—The refusal to instruct the jury to the effect that the evidence of the results of the experiments made by the prosecution should be disregarded unless the jury found that those experiments were made under conditions and circumstances which were the same, or substantially the same, as those which existed at the time of the killing, is error, as the determination of the trial court before ruling upon the admissibility of such evidence is not conclusive upon the jury.

ID.—ORAL ADMISSIONS — CAUTIOUS CONSIDERATION — REFUSAL OF INSTRUCTION—ABSENCE OF ERROR.—The refusal to instruct the jury to the effect that evidence of oral admissions should be viewed and considered by the jury with caution is not reversible error.

ID.—CONVICTION UPON ADMISSIONS—ESTABLISHMENT OF CORPUS DELICTI —REQUESTED INSTRUCTION—REFUSAL PREJUDICIAL ERROR.—In this prosecution it is held that under the particular and peculiar circumstances the court erred to the substantial prejudice of the defendant in refusing to charge the jury at the request of the defendant as follows: "You are instructed in this case that before you can convict the defendant you must be convinced from the evidence beyond a reasonable doubt and to a moral certainty that a criminal homicide was in fact committed; and you must be so convinced by evidence other than or in addition to the statements or admissions of the defendant, and this evidence must be sufficient to establish that the death of the deceased was produced by the criminal act of some person and was not the result of accident. The production of the dead body does not alone establish the criminal homicide; and proof of the dead body alone found, with the statements of the defendant, would not be sufficient to convict, for there must be some evidence tending to show the commission of a homicide before the statement of the defendant would be admissible for any purpose; and hence if you believe in this case that the only evidence which shows that a crime was committed is the production of the dead body of the deceased, coupled with the admissions or statements of this defendant, then it is your duty to acquit this defendant."

ID.—EXTRA-JUDICIAL CONFESSIONS—WHEN INSUFFICIENT.—A defendant
   charged with crime must not be convicted upon his extra-judicial
   confessions or admissions, unless such confessions or admissions be
   corroborated by proof *aliunde* of the *corpus delicti.*

APPEAL from a judgment of the Superior Court of
Fresno County, and from an order denying a new trial.
H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Everts & Ewing, for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena,
for Respondent.

LENNON, P. J.—The defendant in this case, upon an in-
formation charging him with the crime of murder, was con-
victed of manslaughter and sentenced to serve a term of eight
years in the state prison at San Quentin. The appeal is
from the judgment and from an order denying the defendant
a new trial.

The facts of the case upon which the people relied for a
conviction, briefly stated, are these: At and prior to the time
of the alleged commission of the offense the defendant, Roy
Wagner, a boy of nineteen years of age, was residing with his
father, the deceased, Otto F. Wagner, at the home of the
latter near the city of Fresno. At the time of the commis-
sion of the offense and for three months prior thereto the de-
fendant was the only person who resided with the deceased.
Between the hours of 7 and 8 A. M. on March 15, 1915, the
neighbors of the deceased heard a shot apparently fired in the
vicinity of the house of the deceased, and about forty minutes
thereafter saw the defendant leave his father's house and
proceed at a rapid gait toward the near-by home of a Mr.
J. H. Fisher. When the defendant arrived there he ex-
claimed to Fisher, his family, and a hired man named Dickin-
son, all of whom were seated at the breakfast table, "Come
over. I have shot my father, and I think I have killed him."
Thereupon Dickinson returned with the defendant to the
home of the deceased, and upon arriving there found the dead
body of the deceased lying on its back on the floor of the
kitchen. Dickinson felt the face of the deceased, and the de-

fendant thereupon exclaimed, "He is dead." Fisher followed some ten minutes later, and upon arriving at the home of the deceased met the defendant at the kitchen door, who then exclaimed, "Isn't it awful." In explana⁺i₂n of how the killing occurred the defendant stated to both Fisher and Dickinson that while seated in a chair he had been cleaning a loaded gun, and that after cleaning the gun he reloaded it, and when attempting to lower the hammer it slipped from his thumb and discharged the contents of a shell into the body of the deceased. The defendant then voluntarily proceeded to show how the killing occurred by illustrating how he sat in the chair, and how he held the gun before and at the moment of its discharge. The defendant further stated that his father, the deceased, had repeatedly cautioned him to be extremely careful in the handling of that particular gun because the hammer thereof was defectively constructed. The autopsy upon the body of the deceased showed that the contents of the shell struck him on the right side of the head above and around the ear, producing a fracture of the skull at the base of the brain. The body of the deceased was found lying in an angular position in front of the kitchen table which was placed before and extended across the window. The feet of the deceased extended under this table. The deceased, so the defendant said, was standing in front of this table at the time the gun was discharged, and the upper sash of the window had two shot holes in it. When Dickinson and Fisher arrived at the home of the deceased the gun which did the killing was standing in a corner of the kitchen behind the kitchen table and adjacent to the window.

The prosecution offered and were permitted to show, over the objection of the defendant, the result of certain experiments made by the district attorney and peace officers in shooting into a wooden figure of about the size of the deceased, for the purpose of rebutting the statements of the defendant that the killing was the result of an accident.

The defendant did not take the stand in his own behalf, and the case was submitted to the jury upon the evidence substantially outlined above.

Proof of the *corpus delicti* of the conclusive and convincing character required to support a conviction of the crime charged was not a prerequisite to the reception in evidence of the extra-judicial statements of the defendant that he had

killed the deceased. *Prima facie* proof of the *corpus delicti* was sufficient for that purpose; and it was not essential to the proof and purpose to show that the crime charged was committed by the defendant. (*People* v. *Vertrees,* 169 Cal. 404, [146 Pac. 890]; *People* v. *Rowland,* 12 Cal. App. 6, [106 Pac. 428]; *People* v. *Spencer,* 16 Cal. App. 756, [117 Pac. 1039].)

We are of the opinion that the evidence relating to the finding of the body of the deceased, its position when found, the location, nature, and result of the gunshot wound which caused the death of the deceased, the position in which the shotgun which did the killing was standing when the body of the deceased was found by Fisher and Dickinson, the remoteness of the gun from the place where the body of the deceased had apparently fallen and remained after the shooting, coupled with the fact that the defendant was seen leaving the house of the deceased and proceeding in the direction of the Fisher place some forty minutes after the sound of a shot was heard by neighbors apparently fired from a gun in the vicinity of the house of the deceased, was not only sufficient to repel the inference that the death of the deceased was self-inflicted, or the result of a stray shot entering through the kitchen window from the gun of a passing hunter, but was sufficient *prima facie* to establish the *corpus delicti* as a foundation for the admission in evidence of the extra-judicial statements of the defendant that he had caused the death of the deceased.

It is of no consequence in the present case that proof was not made until after the reception in evidence of the defendant's extra-judicial statements, of the fact as to the time when the defendant was seen leaving the home of the deceased after a shot was heard in that vicinity. If this fact was essential to the proof of the *corpus delicti* as the foundation for the admission in evidence of the defendant's extra-judicial statements, it ultimately appeared in evidence; and in the absence of a showing that the defendant was prejudiced thereby, the irregularity in the order of proof must be held to be harmless. (*People* v. *Barnnovich,* 16 Cal. App. 427, [117 Pac. 572].)

The trial court erred to the substantial prejudice of the defendant in its ruling permitting the prosecution to show, over detailed and sufficient objections, the result of certain

experiments made by the district attorney and others with shots fired from the gun which killed the deceased at and into cardboards and blocks of wood which were intended to represent the deceased, and supposedly placed in the position in which he stood at the time of the killing. The purpose of these experiments, as declared by the district attorney, was "to show the pattern that would be formed by shooting a shell of the same kind that the defendant said was used that morning and using it in the same gun." The evidence concerning the result of the experiments tended to show that if the gun had been discharged on the morning of the killing in the manner and under the same circumstances described by the defendant, the pattern and location of the shot would have been different from the pattern and location of the shot actually found upon the head of the deceased and in the window casement. While the admission of evidence showing the results of experiments is largely within the discretion of the trial court, nevertheless the admission of such evidence is regulated and must be controlled by the well-settled rule that it must be first shown that the experiments relied upon were made under conditions and circumstances which were essentially the same as those which existed when the alleged occurrence took place. (*People* v. *Woon Tuck Wo,* 120 Cal. 294, [52 Pac. 833]; *People* v. *Hill,* 123 Cal. 571, [56 Pac. 443]; *People* v. *Solani,* 6 Cal. App. 103, [91 Pac. 654]; *State* v. *Justus,* 11 Or. 178, [50 Am. Rep. 470, 8 Pac. 337]; *Commonwealth* v. *Piper,* 120 Mass. 185.) The rule in this behalf is well stated in the case of *Hisler* v. *State,* 52 Fla. 30, [42 South. 692]. In that case the defendant was charged with murder, and his defense was that the shooting which resulted in the death of the deceased was accidental. The prosecution sought to discredit the testimony of the defendant as to the conditions under which the shooting was done by introducing in evidence the result of an experiment made by shooting at a target, and which tended to show the area over which the shot from a gun would scatter at a given distance. The case was reversed partly because of the admission of such evidence without first having laid the full foundation therefor, and in the course of its opinion the court said:

"Evidence of an experiment whereby to test the truth of testimony that a certain thing occurred is not admissible

where the conditions attending the alleged occurrence and the experiments are not shown to be similar. The similarity of circumstances and conditions goes to the admissibility of the evidence and must be determined by the court. If in the discretion of the trial court such proffered evidence is rejected, the appellate court will not review the ruling unless an abuse of discretion appears; but where such evidence is admitted over proper objections, and the rule as to similarity of circumstances and conditions attending the occurrence and the experiment does not appear to have been complied with in admitting the evidence, the appellate court will review the ruling, and if error therein be found, and it does not appear from the whole record that no harm could have resulted to the defendant from the admission of such evidence, the error may cause a reversal of the judgment. Evidence of this kind should be received with caution, and only be admitted when it is obvious to the court from the nature of the experiments that the jury will be enlightened rather than confused. In many circumstances a slight change in the conditions under which the experiment is made will so distort the result as to wholly destroy its value as evidence, and make it harmful rather than helpful.''

In the present case no showing was made that the experiments were made under circumstances and conditions which were all the same, or substantially the same, as those which existed when the killing occurred. Thus it was not shown, or attempted to be shown, that the block of wood which was supposed to represent the head and body of the deceased stood in the same position and at the same angle as the deceased stood when he was shot. This the prosecution was unable to do because the defendant, in his explanation and illustration of the circumstances attending the shooting, made no reference to the position of the deceased when he was shot further than to say that he was standing in front of the kitchen table washing the dishes; and for aught that appears in the record, the deceased at the time he was shot may have been standing erect at either end of the table, or may have been standing slightly stooped forward with his head turned slightly toward or entirely away from the defendant. Obviously these added and possible circumstances would have materially altered the result of the experiments relied upon; and the fact that the prosecution was unable to re-

29 Cal. App.—24

produce substantially all of the circumstances and conditions attending the killing should have prompted a rigorous enforcement rather than a relaxation of the rule under discussion. Doubtless the result of the experiments erroneously admitted in evidence tended in no small degree to involve in doubt, if not entirely discredit, the defendant's explanation and illustration of the killing which he made to Fisher and Dickinson.

The trial court rightfully refused to give the instruction requested by the defendant which declared that the evidence of the result of experiments should not be "considered material and effective nor conclusive, but as a mere circumstance to be considered in connection with other evidence in the case." Clearly, this instruction was erroneous in the particular that it declared that evidence of the result of experiments was neither material nor effective; and the fact that it in part stated the law correctly to the extent that such evidence was to be considered by the jury with the other evidence in the case neither warranted nor required the giving of the instruction in whole or in part; for it is the rule that the trial court may rightfully refuse a requested instruction which, although correct in part, involves an erroneous statement of the law. (*People* v. *Davis,* 135 Cal. 163, [67 Pac. 59].

The instruction in question finds no support in the case of *People* v. *Levine,* 85 Cal. 39, 43, [22 Pac. 969, 24 Pac. 631]. The opinion in that case does not declare that as a matter of law the results of experiments must be considered as neither material nor effective. Whatever was said by the court in that case concerning "material and effective evidence" was said by way of argument; and the only point decided upon the experimental phase of the case was that evidence of the result of experiments is not conclusive but must be considered in connection with the other evidence in the case.

The trial court also rightfully refused the requested instruction which was to the effect that if the evidence of the respective experiments made by the prosecution and defendant, made under similar circumstances, showed different results, then the result of each experiment should be totally disregarded by the jury. Such a situation in the evidence

would amount to no more than a conflict of evidence which, like the ordinary conflict of evidence, should be left to the jury for decision.

The refusal of the trial court to give a requested instruction to the effect that evidence of oral admissions should be viewed and considered by the jury with caution was not error. As was stated in the very recent case of *People* v. *Raber,* 168 Cal. 316, [143 Pac. 317], ''Such an instruction, if not in violation of the constitutional injunction against charging juries on matters of fact, is one that may be properly refused as a 'mere commonplace.' In short, a judgment will not be reversed either for the giving or refusing of this instruction.''

Complaint is made of the refusal of the trial court to give several other requested instructions, but by comparison we have ascertained that in every instance the subject matter of each of the requested instructions now under discussion was covered substantially and correctly in the charge of the court.

The trial court, however, erred in refusing to give certain other instructions requested by the defendant, to the effect that the evidence of the result of the experiments made by the prosecution should be disregarded unless the jury found that those experiments were made under conditions and circumstances which were the same, or substantially the same, as those which existed at the time of the killing. As a matter of course, the question of whether or not the conditions and circumstances attending the making of the experiments in question were substantially similar to those attending the killing, was in the first instance a question of fact to be determined by the trial judge before ruling upon the admissibility of the evidence of the result of the experiments, but the trial court's determination of that question was not conclusive upon the jury. Undoubtedly such evidence was proffered and permitted upon the theory that it would assist the jury in arriving at a correct conclusion concerning the conduct and relative positions of the deceased and defendant at the time of the killing, and therefore the question as to whether or not the experiments relied upon were made under the same or substantially the same conditions and circumstances as those which existed at the

time of the killing was one of fact which ultimately was for the jury to weigh and determine. While the instruction immediately under consideration may not have been entirely free from ambiguity, nevertheless in its essential features and as a whole it was sufficiently correct and certain to warrant and require its giving in the absence of anything upon the same subject in the charge of the court.

We are satisfied that under the particular and peculiar circumstances of the present case the trial court erred to the substantial prejudice of the defendant in refusing to charge the jury at the request of the defendant as follows: "You are instructed in this case that before you can convict the defendant you must be convinced from the evidence beyond a reasonable doubt and to a moral certainty that a criminal homicide was in fact committed; and you must be so convinced by evidence other than or in addition to the statements or admissions of the defendant, and this evidence must be sufficient to establish that the death of the deceased was produced by the criminal act of some person and was not the result of accident. The production of the dead body does not alone establish the criminal homicide; and proof of the dead body alone found, with the statements of the defendant, would not be sufficient to convict, for there must be some evidence tending to show the commission of a homicide before the statement of the defendant would be admissible for any purpose; and hence if you believe in this case that the only evidence which shows that a crime was committed is the production of the dead body of the deceased, coupled with the admissions or statements of this defendant, then it is your duty to acquit this defendant."

While the foregoing proposed instruction may not have been perfect in its statement of the rule and principle of law that it was evidently intended to embody, nevertheless, in the absence of anything upon the same subject in the charge of the court, we think it was a sufficiently clear and correct statement of the familiar, well settled, and uniformly adhered to rule of law which imperatively declares and directs that a defendant charged with crime must not be convicted upon his extra-judicial confessions or admissions, unless such confessions or admissions be corroborated by proof *aliunde* of the *corpus delicti*. The proposed instruction was not

faulty in any of the particulars pointed out in the case of *People* v. *Frey,* 165 Cal. 140, [131 Pac. 127], where it was held that a requested instruction upon the same subject was rightfully refused not only because the phraseology employed was calculated to mislead the jury, but also and principally for the reason that it did not contain a definition of the phrase *corpus delicti.* Succinctly stated, the phrase *corpus delicti* means the body of the offense, the essence of the crime, and proof of the *corpus delicti* involves two distinct but nevertheless interdependent factors, viz., the commission of a criminal act and the defendant's guilty participation in the perpetration thereof. While the proposed instruction in the present case did not in terms refer to the *corpus delicti,* nevertheless it did embody all of the essentials of a definition of that phrase, and stated substantially the requirements of the rule involved therein. This being so, no good reason appears why the court should not have given the proposed instruction, or have covered the subject matter thereof in its charge to the jury. We are not unmindful of the rule that where, in any given case, there is evidence apart from the extra-judicial confessions or admissions of the defendant, sufficient to fully establish the *corpus delicti,* the refusal to charge the jury upon that subject will not constitute reversible error. (*People* v. *Tomalty,* 14 Cal. App. 224, [111 Pac. 513].) Although the evidence of the *corpus delicti* presented in the present case was, as previously pointed out, sufficient to warrant the reception in evidence of the extra-judicial statements of the defendant, and upon the whole may have been, standing alone, barely sufficient to have sustained the conviction of the defendant, nevertheless it was not, in our opinion, of a character so conclusive and convincing as to warrant us in saying that the failure of the trial court to give the requested instruction, or state in its charge to the jury the rule of law under discussion, did not operate to the substantial prejudice of the defendant. We cannot conceive that the jury in arriving at the conclusion implied from the verdict, that the *corpus delicti* had been established, did not resort to the evidence erroneously admitted, showing the result of experiments, which tended to discredit the defendant's statements that the killing was the result of an accident, and consequently

it cannot be said that the extra-judicial statements of the defendant formed no part of the evidence upon which the jury determined that the *corpus delicti* had been established. It is evident, therefore, that the proposed instruction was not only of peculiar pertinency to the paramount issue in the case, but was clearly essential to a proper consideration of the evidence by the jury, and that being so, there is no escape from the conclusion that the refusal of the trial court to give such instruction, or to cover the subject matter in its own charge, was an error which, because it deprived the defendant of a substantial right and undoubtedly contributed to the verdict, was sufficient in itself to compel a reversal of the judgment and the granting of a new trial.

The judgment and order appealed from are reversed and the cause remanded for a new trial.

Richards, J., and Kerrigan, J., concurred.