[Crim. No. 15302. Fourth Dist., Div. One. Nov. 30, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS WAYNE SCOFIELD, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Certified for publication with the exception of section II.

COUNSEL

John W. Elkins for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STANIFORTH, J.—Douglas Wayne Scofield was charged with three counts of burglary. (Pen. Code, § 459.) The first two counts involved a burglary of an inhabited building in the nighttime, the third count with an inhabited building. He was also charged with receiving stolen property. (Pen. Code, § 496, subd. 1.) He pleaded not guilty, his Penal Code section 1538.5 motion was denied and he waived a jury. The court found Scofield guilty of first degree burglary on the first two counts and not guilty on the third burglary count and the receiving stolen property count. Scofield received the midterm of four years concurrent sentences on each count. There are two issues on appeal: Must the People establish a nighttime entry as a necessary element of first degree burglary before it is proper to consider Scofield's confession? Secondly, was the confession obtained as a result of illegal police conduct?

FACTS

Most briefly, the facts supporting the guilty verdict are:

Betty Zimmer testified she and her husband were away from home between April 2 and April 16, 1982. Although they had locked up before they

left, when they returned they discovered a broken window and a broken lock. The house had been entered and "turned upside down." The items stolen included commemorative coins, liquor, an ice chest, tools, and a tool box.

Milagros Lizardi testified she left her home on April 12, 1982, around 7:20 a.m. and returned around 8:30 p.m. The door between the garage and the kitchen and the back screendoor had been opened while she was gone. The items stolen from her house included a jewelry box, a pearl necklace, a gold ring with rubies, a purse with silver half dollars, a television remote control device and miscellaneous jewelry and household items.

Touardi Barman owned the North County Gold Exchange in Oceanside. A white male in his late 20's identifying himself as Douglas Scofield sold him a pearl necklace, a gold ring with rubies, and 2 silver dollars on April 13, 1982.

Deputy Charles Wagner testified he investigated a burglary at the Zimmer house on April 15. He found a broken window with a trail, made up of various items of food and jewelry, leading away from it. The trail led to Scofield's campsite. The deputy found two young women there and an ice chest containing liquor of the same label as that from the Zimmer house. Wagner asked the women for identification and asked them to stay at the campsite. He returned to the Zimmer house to get Detective Wittmer.

Detective Wittmer testified he accompanied Wagner to the campsite. Judy Tatum showed him a Vista high school identification card. Heidi Mae Arsenault said she had no identification. Arsenault told the officers Scofield lived with her in the tent. Wittmer obtained Arsenault's consent to search the tent. He found, in plain view, a gold commemorative coin similar to those taken from the Zimmer house. He searched two duffle bags and a jewelry case. Wittmer found Scofield's driver's license in a wallet in one duffle bag. He also found four gold coins and jewelry in the bags. The officers returned to the Zimmers to confirm the property was stolen and shortly thereafter arrested Arsenault for burglary and receiving stolen property. Tatum was arrested for truancy. Scofield was arrested on April 17, 1982. He waived his *Miranda* rights and confessed to both burglaries.

DISCUSSION

I

■ Scofield contends, before his confession could be considered, the People had to make a prima facie showing of a nighttime entry. ■

Scofield was charged with burglary under Penal Code section 459. Burglary is complete upon an unauthorized entry with the intent to commit grand or petty larceny or any felony. (Pen. Code, § 459; *People* v. *Markus* (1978) 82 Cal.App.3d 477 [147 Cal.Rptr. 151]; *People* v. *Sears* (1965) 62 Cal.2d 737 [44 Cal.Rptr. 330, 401 P.2d 938]; *People* v. *Bard* (1968) 70 Cal.2d 3 [73 Cal.Rptr. 547, 447 P.2d 939]; *People* v. *Carter* (1933) 130 Cal.App. 95 [19 P.2d 843].) Penal Code section 460 establishes the degrees of burglary.[2]

Penal Code section 461 provides punishment for burglary. It is divided into two parts: the term for second degree burglary may not exceed one year; the terms for first degree burglary may be two, four, or six years. Reading the three statutes together we see section 459 defines the elements of the crime, section 460 divides the crime into two levels of seriousness for the purpose of sentencing, and section 461 sets out the sentence terms. The aggravating factors used to establish the degree of an offense are not the elements of the crime. (*People* v. *Scott* (1969) 274 Cal.App.2d 905 [79 Cal.Rptr. 587]; *People* v. *Bolinski* (1968) 260 Cal.App.2d 705, 715 [67 Cal.Rptr. 347]; *People* v. *Williams* (1957) 151 Cal.App.2d 173, 177 [311 P.2d 117], cert. den. 355 U.S. 961 [2 L.Ed.2d 535, 78 S.Ct. 547]; *People* v. *Price* (1959) 175 Cal.App.2d 857, 861 [1 Cal.Rptr. 57].)

In *People* v. *Miller* (1951) 37 Cal.2d 801 [236 P.2d 137], the Supreme Court rejected Scofield's contention under a similar statutory context. Miller was convicted of murder, and it was established the murder was first degree based on felony robbery. Miller argued the prosecution was required to establish the underlying crime of attempted robbery before his extrajudicial statements could be used to prove the degree of murder. The court held: "The corpus delicti of the crime of murder having been established by independent evidence, both reason and authority indicate that the circumstances surrounding the commission of the crime can be shown by the extrajudicial statements of the accused, and that such evidence of the surrounding circumstances may be used to establish the degree of the crime committed." (*Id.*, at p. 806.) (Cases in accord are *People* v. *Cantrell* (1973) 8 Cal.3d 672, 680-681 [105 Cal.Rptr. 792, 504, 1256], overruled on other grounds in *People* v. *Wetmore* (1978) 22 Cal.3d 318, 324, 327, fns. 5, 7 [149 Cal.Rptr. 265, 583 P.2d 1308], and *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Cooper* (1960) 53 Cal.2d 755, 765 [3 Cal.Rptr. 148, 349 P.2d 964]; *People* v. *Amaya* (1952) 40 Cal.2d 70, 80 [251 P.2d 324].)

---

[2]Section 460 at the time relevant provided generally: "1. Every burglary of an inhabited dwelling house . . . committed in the nighttime . . . is burglary of the first degree. [¶] 2. All other kinds of burglary are of the second degree."

■ The only evidence these entries were made at night came from Scofield's admission; however, once having established an unauthorized entry with the requisite intent, the People could use these admissions to establish the degree of burglary for the purpose of aggravating the sentence.[3]

## II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## DISPOSITION

We find substantial evidence supports the trial court's conclusion Scofield's confession was free and voluntary, and it could properly be used to prove the nighttime entry for the purpose of determining the degree of burglary.

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 2, 1984.

---

[3]Scofield admits "[t]here is no contention that the other elements of burglary were not sufficiently shown to trigger admission of the defendant's confession" but cites a "passage in *Vertrees* [*People* v. *Vertrees* (1915) 169 Cal. 404 (146 P.890)] which has apparently laid dormant in the dark recesses of the law library for some 60 years" before noticed by CALJIC editors and referenced in a 1982 Use Note for CALJIC No. 2.72. The passage reads: "The time of entering a building is one of the essential elements of the crime of burglary of the first degree and that constituent of the offense may not be proved by the confession of the defendant alone." (*Vertrees, supra,* at p. 413.) Whether or not this statement is dicta, *Vertrees* was decided when proof of a nighttime entry was an element of the crime itself. The law has changed since 1915. Since the time of entry is no longer an element of the crime of burglary, *Vertrees* is not useful on this point.

*See footnote 1, *ante,* page 368.