[Crim. No. 25.    Third Appellate District.—May 15, 1906.]

THE PEOPLE, Respondent, v. A. J. GRILL, Appellant.

CRIMINAL LAW—MURDER—CORPUS DELICTI—EVIDENCE—ADMISSION OF DEFENDANT.—Upon a trial for murder, where the *corpus delicti,* consisting of all the elements of crime, had been established by independent evidence clearly showing that the death of the deceased was produced by criminal means only used by one other person, which evidence pointed strongly to the guilt of the defendant, the admissions, acts and declaration of the defendant were properly admitted against him, and he was not entitled to an instruction to acquit.

ID.—ERRONEOUS INSTRUCTION—QUESTION TAKEN FROM JURY—ACCIDENTAL KILLING.—Where the defendant had testified that the killing of the deceased was accidental, it was prejudicial error, in connection with proper instructions in relation to the presumption of unlawful intent from the killing of the deceased by the defendant, to charge the jury that "unless it is shown by the evidence that his intention was other than his acts indicated, *the law will not hold him guiltless.*" The last clause of the instruction improperly took from the jury the question of accidental killing.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial.    A. G. Burnett, Judge.

The facts are stated in the opinion of the court.

Ross Campbell, for Appellant.

U. S. Webb, Attorney General, C. W. Post, Assistant Attorney General, E. E. Sapp, Deputy Attorney General, E.

B. Power, Deputy Attorney General, and J. Charles Jones, for Respondent.

BUCKLES, J.—The defendant was informed against by the district attorney of the county of·Sonoma for the crime of murder in killing one W. S. Pearce; he was tried and convicted of murder in the first degree and sentenced to the state prison for life.

From the judgment of conviction and the order overruling his motion for a new trial he prosecutes this appeal. The deceased lived with his sixteen year old daughter in the country. The defendant had been stopping there for some time, working at times for others. A son of deceased had also been residing with him up to about two weeks before the homicide. The deceased and defendant were hunting together on Sunday afternoon, June 23, 1905; returned about half-past 7 in the evening. The deceased claimed to have left $19.50 between the mattresses of his bed and when he returned from the hunt it was missing and he accused the defendant with taking it. They quarreled. A disturbance was heard outdoors and defendant took the shotgun and went out the back door and deceased came to the front door and had undressed for bed. The noise seemed to have been made by a pet dog and defendant said he would shoot it, and deceased remarked, "You dirty son-of-a-bitch, if you shoot him you will never shoot another dog as long as you live." They came in the house and were quarreling about the money all the time. The daughter was outdoors ready to go with defendant in a buggy to Mrs. Stoffal's near Lytton's Springs. She heard the shot fired and in a minute defendant came out and she asked him what he had shot and he replied he had killed a skunk. Defendant and the daughter then got in the buggy and drove away. The report of the gun was heard by the witness Bennett, who was one hundred and fifty yards away, and the next morning Bennett went into the Pearce cabin and found the deceased lying on the bed dead. He had been shot with a shotgun. The wound was at the top and back of the head and there were no powder marks. The evidence showed the shot was fired from the rear, and a person sitting on the bed in the room occupied by defendant could plainly see deceased's head where the charge of shot entered.

The doorway between these rooms was an open space. All the evidence up to this point, and none of it elicited from the defendant, fully established the facts that the death of deceased was caused by criminal means, and by another person and not by his own act or by accident, and all this independently of who committed the crime. Besides, the evidence pointed very strongly to the defendant as the guilty person. At this point objection was made to the admission, actions and statements of defendant, upon the ground that the facts above narrated did not establish the *corpus delicti.* (*People v. Tapia*, 131 Cal. 647, [63 Pac. 1001].) The objection was overruled, and upon the same ground, and that without these admissions and statements of defendant the *corpus delicti* had not been proven, defendant moved a dismissal and to have the court instruct the jury to acquit. The court denied the motion, and we think very properly. The *corpus delicti* involves the elements of crime; and in order to prove it all the elements of crime must be made to appear before defendant's confessions, admissions or statements are admissible for any purpose. In other words, every necessary element to show the act was a crime must be proven before anything the defendant may have said tending to connect him with such crime can be given in evidence. (*People v. Simonsen*, 107 Cal. 345, [40 Pac. 440]; *People v. Jones*, 31 Cal. 566; *People v. Thrall*, 50 Cal. 415; *State v. Kesner*, 72 Kan. 87, [82 Pac. 720]; *People v. Ward*, 145 Cal. 736, [79 Pac. 448].) The *corpus delicti* was abundantly proved before any statement of defendant was offered in evidence. There is a more serious assignment of error. The defendant complains of the instruction No. 6, asked by the people and given by the court. As the criticism has been quite pointed of the decision of this court rendered in *People v. Solani*, 2 Cal. App. 225, [83 Pac. 201], we feel compelled to review the subject much more at length than we otherwise would. The ruling in the Solani case was based upon what we conceived to be the decision in *People v. Newcomer*, 118 Cal. 267, [50 Pac. 405].) Whatever conclusion counsel for the people may draw from the language used in the Newcomer case, this is what the court said, quoting the instruction first: "'Every person is presumed to intend what his acts indicate his intention to have been, and, if you find from the evidence beyond a reasonable

doubt that the defendant shot the deceased with a pistol and killed him, the law presumes that the defendant intended to kill the deceased; and, unless it is shown by the evidence that his intention was other than his acts indicated, the law will not hold him guiltless.' Appellant objects to this because it omits to state that this presumption does not arise where 'the proof on the part of the prosecution tends to show' that the killing was justifiable. It is evident, however, that this instruction does not deal with the question as to when the burden of proof is on the defendant to show that the killing was justifiable; it deals only with the question of the intent to kill. In this view the instruction would not have been erroneous if it had not closed with the expression, 'the law will not hold him guiltless.' The court no doubt intended to say that the shooting of the deceased with a pistol was sufficient proof of his intent to kill, in the absence of any other evidence tending to show that he did not intend to kill; but the conclusion that in the absence of any such other proof 'the law will not hold him guiltless' was erroneous, because he might have intended to kill and yet have been guiltless.''

It is true the case was not reversed because of this instruction, but upon other grounds, error in another instruction, but the court did hold that the instruction was erroneous, and we think proceeded to advise the trial court not to use it again, and that the Newcomer case was one in which the defendant sought to show the killing was in self-defense can make no difference. The court seems to lay great stress upon the last words·of the instruction, ''the law will not hold him guiltless.'' The instruction in the Solani case is as follows: '' 'Intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. The intent must be proved; but when an unlawful act is proved, the law presumes it to have been intended, unless otherwise shown by the evidence. It is never required by the prosecution to prove an unlawful intent by positive and direct evidence. In many cases such proof could not be made; and it is deemed sufficient to prove the unlawful act and from such proof the law presumes the unlawful intent. And if the defendant in this case shot John Guidotti, and killed him, the law presumes the defendant intended to kill the deceased; and unless it is shown by the evidence that

his intention was other than his acts indicated, the law will not hold him guiltless.' ''

The instruction in this case at bar is as follows: ''Intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. The intent must be proved; but when an unlawful act is proven, the law presumes it to have been intended, unless otherwise shown by the evidence. It is never required by the prosecution to prove an unlawful intent by positive and direct evidence. In many cases such proof could not be made; and it is deemed sufficient to prove the unlawful act and from such proof the law presumes the unlawful intent. And if the defendant in this case shot W. S. Pearce, and killed him, the law presumes the defendant intended to kill the deceased; and unless it is shown by the evidence that his intention was other than his acts indicated, the law will not hold him guiltless.''

It is true that in declaring such instruction erroneous in the Newcomer case no reference is made to other cases in which the instruction had been held good. In the case at bar the defendant testified in his own behalf and said he was taking the shotgun from his bed to hang it on the wall when it was accidentally discharged and shot the deceased, and we think to give the last clause of the instruction is taking away from the jury the question of accidental killing. The jury was told, ''And if the defendant in this case shot W. S. Pearce, and killed him, the law presumes the defendant intended to kill the deceased.'' Now, he did shoot the deceased and he did kill him, and therefore he intended to kill him. The court then said to the jury: ''Unless it is shown by the evidence that his intention was other than his acts indicated, *the law will not* hold him guiltless.'' It can make no difference in our opinion that the words ''unlawful killing'' were used in Solani case and the case at bar, and were not used in the Newcomer case. The words ''unlawful killing'' in the instruction stand too far away from the words ''the law will not hold him guiltless'' for them to have the qualifying effect the attorney general claims for them.

In *People* v. *Langton,* 67 Cal. 428, [7 Pac. 843], a case which the attorney general cites and a case in which the court sustains a somewhat similar instruction, the question raised

here and in the Solani case was not raised there.   The contention there was that the instruction fixed upon the defendant to show by testimony adduced by himself what his intention was.   And the court said: "The words 'unless the defendant can show,' mean unless he can or does show from the *whole evidence in the case.*"

In *People* v. *Bushton,* 80 Cal. 162, [22 Pac. 127, 549], cited by the attorney general, the words "unless the defendant can show" were changed to "unless it is shown by the evidence," thus expressing clearly just what the court had said the words in the Langton case intended.   And the court approved it by simply saying: "The eleventh instruction stated the law correctly," referring to the Langton case.

We feel certain this instruction was prejudicial to defendant's rights and entitles him to a new trial.   We again call attention to the Newcomer case as furnishing authority in this case for this ruling.   Not necessary to notice other assignments of error.

Judgment is reversed and cause remanded for a new trial.

McLaughlin, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 5, 1906.