[Crim. No. 536.   Third Appellate District.—November 23, 1920.]

# THE PEOPLE, Respondent, v. GEORGE DE MARTINI, Appellant.

[1] CRIMINAL LAW—PERJURY—FALSE TESTIMONY ON VOIR DIRE EXAMINATION—PLEADING AND EVIDENCE.—In a prosecution under an indictment charging the defendant with testifying falsely in making certain answers to questions propounded to him while being examined on *voir dire* as a prospective juror in a criminal case, an allegation that the defendant well knew that the answers were false, followed by proof thereof, is essential to a conviction.

[2] ID.—KNOWLEDGE OF FALSITY OF ANSWERS—MANNER OF PROOF.—In such a prosecution, knowledge of the falsity of the answers may be, and ordinarily must be, shown by the circumstances of the case.

[3] ID.—ADMISSIONS OF DEFENDANT—INSUFFICIENCY TO SUSTAIN CONVICTION.—In such a prosecution, proof of admissions made by the accused while in the jury-room to the effect that he believed the defendant in the criminal case was guilty, but that he would not vote for a verdict of guilty, and that he thought it was a frame-up and that there were others that ought to be convicted the same as the defendant, was not sufficient to sustain a verdict of conviction.

[4] ID.—RECORD IN CRIMINAL CASE—INADMISSIBILITY.—In such a prosecution, the admission of the entire volume of evidence produced on the trial of the criminal case was prejudicial error, and where no other evidence was introduced apart from the admissions of the defendant, the *corpus delicti* was not proved.

[5] ID.—PROOF OF CORPUS DELICTI.—The *corpus delicti* must be proved by evidence independently of admissions of the accused.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial.   Charles O. Busick, Judge.   Reversed.

The facts are stated in the opinion of the court.

George E. Foote, E. R. Vaughn and Downey & Downey for Appellant.

5. Proof of *corpus delicti* in criminal case, notes, 78 **Am. Dec.** 252; 1 **Ann. Cas.** 823; 68 **L. R. A.** 33.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PREWETT, P. J., *pro tem.*—A jury convicted the appellant of the crime of perjury. He appeals upon the ground chiefly that the evidence is insufficient to convict. The indictment charges that the appellant testified falsely in making certain answers to questions propounded to him while being examined on *voir dire* as a prospective juror in a criminal case in which one Fuski was being tried for a felony. These questions and answers are as follows:

"Question: If you are chosen as a juror in this case, you will try this case solely upon the evidence produced in court and the instructions of the court?

"Answer: Yes, sir.

"Question: Nothing outside of the case, that is, outside of the evidence and instructions of the court will enter into your deliberations when you go to the jury-room?

"Answer: No, sir."

The appellant was not asked to state any fact as to the then present condition of his mind, nor, indeed, to state any fact of any kind; but only to declare under oath that he would try the case solely upon the evidence and the instructions of the court, and that he would not let anything outside of the case enter into his deliberations in the jury-room. His declaration to this effect was not more than his solemn oath that he would well and truly try the case on the evidence. His answers constitute, in effect, the usual oath administered to trial jurors. He merely swore or promised that he would keep his oath as a juror.

I.

[1] It is charged in the indictment that appellant well *knew* that the answers which he gave were false. Such an allegation, followed by proof thereof, is essential to a conviction. [2] Such knowledge may be shown, and ordinarily must be shown, by the circumstances of the case, since such mental condition cannot usually be shown by direct evidence. Two lines of evidence were introduced on the trial of the case. The first consisted of the entire volume of evidence produced on the trial of said Fuski, the evidence being read to the jury in this case by the court reporter. This was introduced to show how un-

founded was the stand taken by appellant in the jury-room.
This point will be noticed later.

The second line consisted of the evidence given by certain
fellow-jurors of appellant; and it becomes necessary to
examine this second line of evidence to ascertain whether
the testimony of any one of them, or of all taken together,
is sufficient to establish the crime. We take it that to
justify a conviction herein it must be established beyond
a reasonable doubt by the testimony of these fellow jurors:
(a) That appellant believed, beyond a reasonable doubt,
that the party on trial was guilty, since otherwise, it would
have been his duty to vote as he did for acquittal; (b) That
he did not try the party solely on the evidence and in-
structions; and (c) That he *knew* when he was answering
questions as a prospective juror that he would not try the
case on the evidence and instructions.

A juror, Mr. Sturges, testified that the appellant said
to him, while in the jury-room, that he believed Fuski to
be guilty, but that he would not vote for a verdict of
guilty. This falls very far short of showing that, at the
beginning of the trial, he knew that he would not try
the case on the evidence and instructions. It does not
even show that, at the moment these admissions were made
in the jury-room, he believed that Fuski should be con-
victed.

The law exacts from a juror very much more than a be-
lief that an accused person is guilty. The law requires
that this belief must be so strong that it amounts to a be-
lief beyond a reasonable doubt, and that, if it falls short
of this degree of certainty, the juror must vote for a ver-
dict of not guilty. The appellant, in his admissions to the
above-named juror, gave no intimation that he knew or
believed from the beginning that Fuski was guilty. His
entire opinion as to the guilt of Fuski may have grown up
from disclosures made by witnesses during the progress
of the trial. Two or three other jurors corroborated the
testimony of the juror above named. Another juror, Mr.
Bauer, testified that the appellant said in the jury-room:
"that he thought it was a frame-up—there were others that
ought to be convicted, the same as Fuski." The last clause
of this admission is broad enough to warrant the inference
that the appellant was convinced of the guilt of Fuski to

that degree that would demand a verdict of guilty. Still, it is coupled in the same sentence with a statement that is wholly inconsistent with the idea that he believed him guilty, since he expressed the belief that the prosecution was a "frame-up." But even this strong and unsavory statement is entirely consistent with innocence of the crime, since it does not relate back to the beginning of the trial. It does show a degree of moral obliquity rarely observed in the class of persons listed as jurors. But the appellant is not on trial for general moral delinquency. The charge is the commission of a specific act criminal in its nature, to wit, falsely stating that he would try the accused solely on the evidence and the instructions, knowing that he would not do so. He can, of course, be convicted of no other. At most, the testimony of these fellow-jurors generates a bare suspicion that the appellant is guilty of the specific act charged; but it falls far short of sustaining a legal inference to that effect. Perjury requires a higher measure of proof than any other crime known to the law, treason alone excepted. Any other crime may be established by the testimony of one witness who is entitled to full credit. Both perjury and treason require more than the testimony of one witness. And the charge against the appellant is much more difficult of proof than perjury cases in general. In the ordinary perjury case, the falsity of the oath may be shown by extraneous proof showing the existence or non-existence of the alleged fact; but in a case like this, where the very essence of guilt consists in misrepresenting the state of the offender's own mind, it is difficult to meet the demands of the law in showing the necessary mental condition. But the difficulty of showing this does not relieve courts and juries from the duty of requiring evidence that shows guilt beyond a reasonable doubt, and this reasonable doubt is not overcome by the testimony of a single witness, be he ever so truthful. [3] The evidence submitted to us on this appeal would not sustain a verdict against him even in a civil action, where the mere weight or balance of evidence governs, far less sustain the conclusion beyond a reasonable doubt.

II.

But independently of all other considerations, the verdict cannot stand because the *corpus delicti* was not proved.

The entire evidence thus far discussed consists solely of admissions made by the appellant while in the jury-room. It is an inflexible rule that evidence of the admissions of a party are never sufficient to convict unless and until the *corpus delicti* is proved. Moreover, it is a fundamental rule that no person can ever be lawfully convicted of a crime, be it great or small, upon his admissions or confessions alone. This rule is universally recognized. No one presumes to question it. The term *"corpus delicti"* means simply the fact of the crime or the body of the crime. This does not necessarily involve proof that the accused person is the person committing it, but only that the crime has in fact been committed by *someone*. This may be illustrated by a concrete example. A man is accused of murder. The body of the victim is not found and there exists no direct evidence that the victim was murdered. The accused person confesses at great length all the alleged details of the crime. Such confession is radically insufficient to justify a verdict of guilty. We are not concerned with the reasons for the rule, but when it is recalled that a great number of cranks confess to alleged crimes of which they know nothing, its propriety cannot be questioned.

*After* it is proved that the crime was committed by *some person*, then, and then only, may the omissions of the accused be used to show that he is the one committing it. Cases of the kind charged against the appellant are unique in this particular, that proof of the *corpus delicti* is so interwoven with proof of the identity of the person committing the offense that it is difficult to establish the first fact without also, at the same time establishing the other. In other words, since proof of the admissions of the appellant is not competent to establish the *fact* of the perjury, and since proof of the *fact* of the perjury must, in this particular case, show that the appellant is the person committing it, evidence of his admissions cannot do more than confirm other and basic proofs. These basic proofs are wholly wanting.

[4] The prosecution, doubtless recognizing and seeking to avoid this rule, offered in evidence in this case, the entire volume of evidence that was given in the case of the *People v. Fuski*, 49 Cal. App. 4, [192 Pac. 552]. This was offered

for the avowed purpose of showing that the appellant was not justified in believing from that evidence that the prosecution was a "frame-up" and in persisting in voting for an acquittal. This procedure was, in effect, asking the jury in this case to retry the Fuski case for the purpose of determining whether or not the appellant was justified therefrom in voting for acquittal. But this rule might lead to some *bizarre* results. If it is admissible in this case, it must all. be carried over into a hypothetical case involving a juror who sat on. the trial of appellant, and so on *ad infinitum.* But if that evidence shows that this appellant is guilty, it likewise shows that the other two jurors who voted with him for an acquittal are guilty. But the evidence in the other case was inadmissible in this case for any purpose whatever. The law provides no machinery whereby the jury in this case could review the evidence submitted in the former case. Still less could this jury determine the weight of the evidence and the credibility of the witnesses. The weight of evidence depends much upon the manner of the witness and the connection in which it is given. The credibility of a witness can be judged only by one who hears him testify. One of the highest functions of a juror is to measure up the credibility of a witness. This is a duty that can be neither delegated nor reviewed. The mere disagreement of three jurors does not ordinarily lead to the conviction that they have committed perjury or otherwise violated their oath as jurors.

Nor could this evidence in the Fuski case show, or tend to show, that the appellant intended from the beginning to vote for an acquittal.

This was the only evidence, apart from the admissions of the appellant, that was offered in the case. This leaves the *corpus delicti* wholly unproved. It is not a case where the evidence on this point is weak. It is a case where it is wholly wanting.

[5] So many California cases hold that the *corpus delicti* must be proved by evidence independently of admissions of the accused that it would be impracticable to refer to more than a few of them. In *People* v. *Tapia,* 131 Cal. 651, [63 Pac. 1001, 1003], the supreme court says: "Of course, it is well settled law that the *corpus delicti* must be established independently of evidence which merely

tends to connect the defendant with the crime charged and independently of any asserted extra judicial confessions or admissions of the party charged, *and that such admissions or confessions cannot be considered as evidence of the corpus delicti.*" (The italics are ours.) Other cases to the same effect are: *People* v. *Grill,* 3 Cal. App. 514, [86 Pac. 613]; *People* v. *Simonsen,* 107 Cal. 345, [40 Pac. 440]; *People* v. *Frey,* 165 Cal. 145, [131 Pac. 127]; *People* v. *Jones,* 31 Cal. 566; *People* v. *Thrall,* 50 Cal. 415; *People* v. *Jones,* 123 Cal. 65, [55 Pac. 698].

Viewed from every angle it seems impossible to uphold the conviction. The judgment and order appealed from are reversed.

Hart, J., and Burnett, J., concurred.