[No. E007906. Fourth Dist., Div. Two. Nov. 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY MARTIN CULTON, Defendant and Appellant.

## COUNSEL

Howard J. Specter, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Steven H. Zeigen, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**TIMLIN, J.**—A jury trial having been waived by defendant and the People, defendant was found guilty by the trial court of 10 counts, each charging defendant with a violation of Penal Code section 288, subdivision (a), a felony, by committing a lewd and lascivious act upon the body of Chelsea C. (minor), a child under the age of 14 years, during a certain time period.[1]

The sentencing court suspended imposition of sentence and ordered defendant placed on five years' formal probation subject to certain terms and conditions, one of which is that he serve three hundred and sixty-five days' incarceration in the Riverside County jail.

Defendant assigns a single error on appeal. He contends that there was insufficient evidence of the corpus delicti as to each of the 10 offenses of which he was convicted—and that, consequently, the trial court erred in admitting into evidence his extrajudicial statements to a law enforcement officer, which statements were tantamount to a confession that he committed each of the alleged offenses.[2,3]

---

[1] All further statutory references shall be to the Penal Code unless otherwise stated.

[2] In the defendant's opening brief he also contended that the trial court erred in considering as evidence on the issue of the existence of a corpus delicti the minor's statements to a law enforcement officer that defendant one time touched her in her vaginal area underneath her panties. This statement was admitted as a prior inconsistent statement by the minor after she testified at trial that she could not remember the interview with the law enforcement officer and that no one, including her father, ever touched her between her legs in a way she did not like. Defendant, however, in his reply brief agreed with the People's assertion that the court did not rely on the minor's extrajudicial statement to the law enforcement officer in determining whether the People had made a prima facie showing of a corpus delicti for each of the charged offenses, but relied only on the testimony of Dr. Steven Trenkle in making this decision.

[3] At our request, counsel submitted supplemental letter briefing on the further issue of whether article I, section 28, subdivision (d) of the California Constitution ("Right to Truth-in-Evidence") has entirely abrogated the corpus delicti rule in California. See discussion in concurring opinion.

I

## FACTS AND PROCEDURAL BACKGROUND

During the presentation of the People's case-in-chief, the People moved to admit into evidence exhibit 3, a tape recording of the defendant's extrajudicial statements to Riverside County Sheriff's Detective Donald Riedman during an interview, and exhibit 4, a transcript of the tape recording of the interview. Defendant objected to that evidence being admitted on the ground that the People had not carried their burden of establishing the corpus delicti of each of the charged offenses. The court reserved ruling on the motion and at the request of defendant, allowed Ms. Linda Ruggreiri to testify as a witness during the People's case-in-chief on the issue of the existence of a corpus' delicti.

After Ms. Ruggreiri's testimony, the court found that the People had met their burden of making a prima facie evidentiary showing as to the corpus delicti regarding each of the charged offenses based upon Dr. Trenkle's testimony as a percipient witness who had examined the minor and as an expert witness expressing certain opinions based in part on such examination. It then admitted into evidence exhibits 3 and 4.

After considering all the evidence in the case, including exhibits 3 and 4, the court found defendant guilty of the charges alleged in counts one through ten of the information.

II

## DISCUSSION

Defendant contends that the trial court erred in finding the People did carry their burden of making a prima facie showing of the corpus delicti of each of the charged offenses and then admitting his inculpatory statements. We disagree.

The California law regarding the corpus delicti rule as to its elements, the necessary proof thereof and the burden of proving such, was recently stated in *People* v. *Wright* (1990) 52 Cal.3d 367, 403-404 [276 Cal.Rptr. 731, 802 P.2d 221] as follows: "In any criminal prosecution, the corpus delicti must be established by the prosecution independently from the extrajudicial statements, confessions or admissions of the defendant. [Citations.] The elements of the corpus delicti are (1) the injury, loss or harm, and

(2) the criminal agency that has caused the injury, loss or harm. [Citation.] 'The independent proof may be by circumstantial evidence [citation], and it need not be beyond a reasonable doubt. A slight or prima facie showing, permitting the reasonable inference that a crime was committed, is sufficient. [Citations.]' [Citation.] It is not necessary for the independent evidence to establish that the defendant was the perpetrator. [Citations.]"

The People's burden is met by evidence which creates a reasonable inference that the harm could have been caused by a criminal agency, *even in the presence of an equally plausible noncriminal explanation of the incident.* Circumstantial evidence and inferences that may reasonably be drawn therefrom are adequate. (*People* v. *Mattson* (1990) 50 Cal.3d 826, 874 [268 Cal.Rptr. 802, 789 P.2d 983].)

*People* v. *Jennings* (1991) 53 Cal.3d 334, 368 [279 Cal.Rptr. 780, 807 P.2d 1009], in stressing that the People's burden of producing evidence to satisfy the corpus delicti rule is slight, said: "We reemphasize that the quantum of evidence the People must produce in order to satisfy the corpus delicti rule is quite modest; case law describes it as a 'slight or prima facie' showing. [Citations.] This minimal standard is better understood when we consider that the purpose of the corpus delicti rule is 'to protect the defendant against the possibility of fabricated testimony which might wrongfully establish the crime and the perpetrator.' [Citation.] As one court explained, 'Today's judicial retention of the rule reflects the continued fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically.' [Citation.]"

As noted above, the corpus delicti of a crime is established by a prima facie showing of (1) the fact of the injury, loss or harm (in this case, a lewd or lascivious act committed upon the body of a child under 14 years of age) and (2) the fact of criminal agency in bringing about the injury, loss or harm (that is, the fact that the lewd or lascivious act was committed by another person). ▇▇ Defendant does not appear to contend that there was an insufficient prima facie showing, independent of the statements by the defendant to Detective Riedman, of the fact of a lewd or lascivious act having been committed upon minor; rather, defendant urges that Dr. Trenkle's testimony, including his expert opinions, did not constitute a prima facie showing from which a trier of fact could reasonably infer that a lewd or lascivious act was committed upon the minor's body *by a criminal agency.* ▇▇ Proof of criminal agency requires evidence from which it might be concluded that the injury or harm resulted from the intentional act of a(nother) human being. (*People* v. *Ott* (1978) 84 Cal.App.3d 118, 130-131

[148 Cal.Rptr. 479], disapproved and/or criticized on another ground by *People* v. *Beeman* (1984) 35 Cal.3d 547, 556-560 [199 Cal.Rptr. 60, 674 P.2d 1318].)

■ With the foregoing legal principles in mind, we now review the evidence presented by both the People and the defendant through the testimony of Dr. Trenkle and Ms. Ruggreiri, respectively, on the corpus delicti issue.

Dr. Trenkle testified on behalf of the People as follows: He is a physician licensed in the state of California and a board certified pediatrician. He is employed as an assistant professor of pediatrics at Loma Linda University and is also the medical director of the child abuse and neglect team at the Riverside County General Hospital.[4]

On April 7, 1988, he conducted a forensic genital exam of the minor, who at that time was four years eleven months old. As a result of the examination, he noticed abnormalities or physical symptoms which would have been consistent, in his opinion, with the possibility that the minor may have been the victim of sexual assault or abuse.

The principal abnormalities or physical symptoms about which he testified as a percipient witness and as an expert witness were observed by him while he was examining the minor's vaginal area with a culdoscope. These abnormalities/symptoms were labial adhesions (adhesions) in the minor's vaginal lip area and the size of the minor's hymenal ring (hymen).

1. *Adhesions*

Adhesions are the sticking together of the vagina's inner lips due to certain causes. Dr. Trenkle measured the minor's vaginal lip adhesions and determined that they were eight millimeters in length. These adhesions could have been caused by abrasions to the vaginal lips as a result of (a) a third person rubbing the minor's labia with a finger or a hand to the point where the inner surfaces of the labia became rough or scraped, or (b) the minor scratching or rubbing the labia as a result of a genital itch or soreness, which scratching and rubbing aggravates or exacerbates the irritated condition, or (c) a trauma or inflammation to the genital area due to someone manipulating the genitalia, which inflammation and soreness results in the minor not washing the area and developing poor hygiene, thereby leading to the minor scratching and itching, or (d) a skin condition or yeast infection.

---

[4]Defendant has not challenged Dr. Trenkle's qualifications to express expert opinions regarding the matters upon which he gave expert witness testimony during trial of this case.

The minor's adhesions were of average density or thickness but Dr. Trenkle knew of no way to determine whether they occurred as a result of a single instance of traumatic inflammation or because of multiple trauma. The adhesions, however, were not inconsistent with multiple occasions of very vigorous or severe irritation of the vaginal area by very rough or prolonged hard rubbing. They could have formed within the week immediately prior to the examination or years past, but in his opinion they had not occurred as a result of a very recent trauma.

On cross-examination Dr. Trenkle testified that at the time of the examination he saw no indication of the minor's adhesions being caused by vaginitis, self-induced rubbing, yeast infection or a hygiene problem. But he had no way to determine when the adhesions occurred or when they began. The minor could have had an infection or chicken pox or a yeast infection and by the time he had examined her the effects of those conditions would be gone and only the adhesions would remain. He further testified that if the minor had chicken pox before the exam, he would not expect chicken pox to cause the adhesions unless the pox was located in the genital region. However, if she had chicken pox in the genital area two or three months before the examination, any resulting adhesions could be present at the time of the exam. His examination did not necessarily reveal lingering signs of chicken pox.

In the population of suspected sexually abused female children, whom Dr. Trenkle would examine with the use of a culdoscopic magnification, 50 percent or less of such children would have adhesions similar to those manifested by the minor.

In response to the court's questions, Dr. Trenkle expressed the following opinions: If you contrast the sexually abused female population with which Dr. Trenkle is experienced, minor's adhesions were moderate as opposed to severe or normal. In the sexually abused female child population, 10 to 15 percent would have experienced the stage of adhesions which the minor had and most of the remaining population would have less severe adhesions.

In a nonsexually abused female child population, children with symptoms of a discharge or itching in the vaginal area or painful urination who are then given a forensic genital examination using a culdoscopic magnification, 20 to 30 percent would have adhesions.

If, in a nonsuspected sexual abuse population of five-year-old female children, a physician conducted a visual examination of the external genitalia of the children, using a good light source, he or she would find 10 percent

with some form of adhesions. If a physician conducted a forensic genital examination of such children similar to the one Dr. Trenkle conducted on the minor, approximately 10 percent would have some form of adhesions. But only 2 to 3 percent of such population, which was subjected to the same type examination, would have moderate adhesions like the minor had.

### 2. Condition of Minor's Hymen

As part of the forensic genital examination, Dr. Trenkle checked the diameter of her hymen. The hymen is a band of mucous membrane that essentially is the border between the vaginal mucosa or the vagina and the outside world. He noted the diameter was five millimeters side to side. In his opinion, five millimeters is the upper limit of the normal range for a transverse diameter for five-year-old females. In a five-year-old female the hymen is stretchable and repeated penetration of the hymen by a finger or other object could result in the hymenal opening enlarging over a period of time without tearing of the hymen. Under cross-examination, Dr. Trenkle testified that he did not know if the five-millimeter measurement was an enlargement or a normal dimension of the hymen at the time of the examination.

Under examination by the court, Dr. Trenkle testified that, in a nonsuspected sexual abuse population of five-year-old females, 5 percent would have a five-millimeter hymenal opening, 60 or 70 percent would have a two- to five-millimeter opening, and the balance of the population would have either a smaller opening or a larger opening.

Finally, during cross-examination, Dr. Trenkle testified that the medical examination he conducted on the minor was not itself diagnostic of sexual abuse upon her. It did not show bruises, contusions or lacerations and he could not tell if the minor's adhesions were caused by lawful or unlawful agency.

Linda Ruggreiri testified for the defense on the issue of corpus delicti. She stated that she is minor's aunt and during the midwinter of 1987, minor had developed chicken pox in her vaginal area and she scratched that area heavily. On cross-examination she testified that she personally did not examine the minor's bare vaginal area to see where the chicken pox was affecting her but the minor had to be told to keep her hands off herself. She observed the minor pawing herself through her clothing in the area of her vagina but did not see the minor place her hands within her pants and manipulate her vaginal area.

The court, after hearing argument, made the following statements in its ruling:

"THE COURT: . . . based upon the testimony from the doctor, I feel there is enough evidence here as far as the corpus is concerned. . . . I think it's more reasonable than not that what the doctor observed was the product of some form of sexual abuse.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . But as far as the corpus is concerned, I feel that the People have more than amply met their burden for purposes of the corpus. That's based upon the degree of adhesion, the size of the hymen, and Dr. Trenkle's testimony concerning what he would expect in the general population of children in that age.

". . . I feel he is an expert. He practiced pediatrics prior to 1981, and he has seen a number of children, and I find that he is an expert in the field of pediatrics and certainly well qualified to give his opinion. I haven't heard any contrary medical evidence.

"Obviously, there are some reasonable inferences that one can draw. That's why the doctor was not specific—diagnostically specific on his diagnosis. However, I think the reasonable—the most reasonable interpretation of the evidence is that the child was the victim of sexual abuse. . . ."

As noted earlier, defendant contends that the trial court's reasoning and ruling as quoted above is in error because Dr. Trenkle's testimony did not constitute sufficient evidence for a prima facie showing by the People of the corpus delicti of each of the charged offenses. To the contrary, we conclude that the testimony of Dr. Trenkle, who was not only the examining physician and therefore a percipient witness, but also qualified to express opinions, was sufficient evidence to create a reasonable inference by the court that minor, who was under the age of 14 years, suffered harm or injury by lewd and lascivious touching by a third person (not herself).

The required corpus delicti was more than reasonably inferable by Dr. Trenkle's testimony that the minor's adhesions could have been caused by the rubbing of her genital area by a finger or hand of someone other than the minor.

Defendant suggests that the minor's adhesions resulted from her having in midwinter of 1987 chicken pox in the vaginal area and as a result, the minor was vigorously scratching that area. Dr. Trenkle did testify that chicken pox in the vaginal area could result in such scratching and causing adhesions. Although this is one plausible explanation for the cause of the adhesions, it

does not preclude another plausible explanation—that the adhesions were partially, if not wholly, caused by a third party's rubbing her vaginal area. Additional evidence to support the reasonableness of the trial court's inference was Dr. Trenkle's testimony that in the sexually abused female child population, with which he has experience, the minor's adhesions would be considered moderate and only 10 to 15 percent of such population would have moderate adhesions with most of the remaining population having less severe adhesion. But in the nonsuspected sexually abused five-year-old female population, only 2 to 3 percent would have moderate adhesions like the minor.

Moreover, additional evidence further supports the court's inference that the corpus delicti had been established. Dr. Trenkle testified that the minor's hymen, being five millimeters in size, was in the upper normal range for the transverse diameter of the hymen of five-year-old females in the nonsexually abused population with 5 percent in that group having a five-millimeter diameter and 60 percent having a diameter of two to five millimeters. Finally, Dr. Trenkle's expert testimony, which was not challenged by the defendant, was that the adhesions and hymen size of the minor were consistent with the minor being a victim of sexual abuse.

To repeat, we conclude that cumulatively such testimony was sufficient evidence to raise reasonable inferences of the corpus delicti of the offenses as charged against defendant.

Defendant further contends that even if the corpus delicti had been established, the People did not produce sufficient evidence to make a prima facie showing that a lewd and lascivious act was committed on the minor by another person on more than one occasion. Consequently, he argues the court could not reasonably infer a corpus delicti for more than one of the ten counts. Not so. Dr. Trenkle specifically testified that in his opinion the minor's adhesions were not inconsistent with multiple occasions of fondling or rubbing of the minor's genital area or with multiple occasions of very vigorous or severe irritation of the vaginal area by rough or very prolonged hard rubbing. Once again, although one may infer a plausible explanation that the multiple occasions of touching of the minor's vaginal area was not pursuant to a criminal agency, we conclude that the trial court on the other hand could reasonably infer from Dr. Trenkle's expert testimony that another plausible explanation was that a third party on different occasions lewdly and lasciviously touched the minor in the vaginal area by rubbing and manipulating it to such a degree that adhesions developed.

Based on the foregoing discussion, we conclude that the People made a sufficient prima facie showing through Dr. Trenkle's testimony from which

the court reasonably inferred that as to each of the 10 charged offenses, the minor was harmed or injured by a lewd and lascivious touching by a third person. Consequently, the trial court did not err in finding that the People carried their burden of showing the corpus delicti of each count and admitting into evidence defendant's inculpatory statements to Detective Riedman, through exhibits 3 and 4.

DISPOSITION

The judgment entered below is affirmed in full.

Dabney, Acting P. J., and McDaniel, J.,* concurred.

**TIMLIN, J.,** Concurring.—As the author of the lead opinion, I am of course in agreement with the views expressed therein. Nevertheless, I write separately to express a further basis for affirming the judgment, which basis addresses an important issue of law referenced in footnote 3 of the lead opinion. To repeat: Has California's corpus delicti rule been abrogated by article I, section 28, subdivision (d) of the California Constitution (the "Right to Truth-in-Evidence")?[1] My answer is: Yes.

The RTE provides: "Right to Truth-in-Evidence. Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press." The RTE, then, operates so as to ensure the admissibility of relevant evidence absent the existence of (a) a statutory exclusionary rule enacted by a two-thirds vote of the membership in each house of the California Legislature, or (b) some specifically denominated exception set forth within a California constitutional provision, or (c) some overriding principle of federal constitutional law.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.

[1]This constitutional provision was adopted by initiative vote in 1982 as a part of Proposition 8 (the "Victims' Bill of Rights"). This "Right to Truth-in-Evidence" provision will hereinafter be referred to as "the RTE."

Clearly, admissions and confessions constitute "relevant evidence."[2] (Indeed, as noted in the lead opinion, the corpus delicti rule arose, at least in part, as a judicially created exclusionary rule of evidence in precise recognition of the fact that jurors are apt to find admissions and confessions "*too relevant.*") Further, the corpus delicti rule does not fall within the ambit of the specifically denominated exceptions set forth within the RTE, is not rooted in the California Constitution, and is not compelled by any overriding principle of federal constitutional law (*Opper* v. *United States of America* (1954) 348 U.S. 84, 89-93 [99 L.Ed. 101, 106-109, 75 S.Ct. 158]).

Thus, the tension between the corpus delicti rule (which restricts the admissibility of extrajudicial admissions and/or confessions by the criminal defendant—*statements which admittedly constitute relevant evidence*) and the RTE (which insists on the admissibility of all relevant evidence which does not fall within the reach of narrowly drawn exceptions) is apparent.

The best possible argument that can be made in favor of concluding that the corpus delicti rule has survived the adoption of the RTE is the simple fact that our Supreme Court has continued to recognize and apply the corpus delicti rule since the adoption of the RTE.[3] This argument, however, suffers the fatal flaw that none of the Supreme Court opinions that have recognized and applied the corpus delicti rule since the adoption of the RTE (or any other reported opinion, for that matter) has examined the issue of whether the corpus delicti rule has been abrogated by the RTE.[4] Thus, these opinions do not stand as authority for the proposition that the corpus delicti rule *has* survived the adoption of the RTE: "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and *an opinion is not authority for a proposition not therein considered.*" (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]; italics added.)

On the other side of the issue we are compelled by the Supreme Court's statement that: "The intent of the electorate that both *judicially created* and

[2]Section 210 of the California Evidence Code defines "relevant evidence" as "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

[3]See, e.g.: *People* v. *Mattson* (1990) 50 Cal.3d 826, 873-874 [268 Cal.Rptr. 802, 789 P.2d 983]; *People* v. *Wright* (1990) 52 Cal.3d 367, 403-404 [276 Cal.Rptr. 731, 802 P.2d 221]; *People* v. *Jennings* (1991) 53 Cal.3d 334, 364-368 [279 Cal.Rptr. 780, 807 P.2d 1009]; and *People* v. *Diaz* (1992) 3 Cal.4th 495, 528-529 [11 Cal.Rptr.2d 353, 834 P.2d 1171].

[4]This issue *has* been thoroughly and persuasively examined, however, in a recent Comment published in the California Law Review: Crisera, *Reevaluation of the California Corpus Delicti Rule: A Response to the Invitation of Proposition 8* (1990) 78 Cal.L.Rev. 1571 (hereinafter cited as Crisera).

statutory rules restricting admission of relevant evidence in criminal cases be repealed except insofar as section 28(d) expressly preserves them is manifest." (*People* v. *Harris* (1989) 47 Cal.3d 1047, 1081-1082 [255 Cal.Rptr. 352, 767 P.2d 619], italics added.)[5] In general terms, the constitutional mandate expressed in the RTE has been judicially developed and applied in a twofold manner: (1) Exclusionary rules of evidence which derive from or are inextricably intertwined with statutorily expressed substantive rights of the criminal defendant typically are found not to have been abrogated by the RTE (see, e.g., *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 808-810 [210 Cal.Rptr. 204, 693 P.2d 789]); while (2) exclusionary rules of evidence which are intended primarily (if not solely) as a remedy for a violation of the criminal defendant's substantive rights typically are found to have been abrogated by the RTE unless they are otherwise required by principles of federal constitutional law (see, e.g., *In re Lance W.* (1985) 37 Cal.3d 873, 884-890 [210 Cal.Rptr. 631, 694 P.2d 744], and *People* v. *May, supra,* 44 Cal.3d 309, 315-320).

The corpus delicti rule does not fit neatly into either the "statutory substantive right" category of evidentiary rules or the "exclusionary remedy" category of evidentiary rules. However, it seems manifest to me that the corpus delicti rule more clearly belongs in the "exclusionary remedy" category of evidentiary rules because the corpus delicti rule historically has been developed and applied as a "remedy" to guard against the fact that confessions and admissions are unreliable and untrustworthy in certain circumstances. As stated in *Jones* v. *Superior Court* (1979) 96 Cal.App.3d 390, 397 [157 Cal.Rptr. 809]: "The corpus delicti rule was established by the courts to 'protect a defendant from the possibility of fabricated testimony out of which might be wrongfully established both the crime and its perpetrator.' (*People* v. *Vertrees* (1915) 169 Cal. 404, 409 [146 P. 890]; *People* v. *DeMartini* (1920) 50 Cal.App. 109, 113 [194 P. 506]; *People* v. *Cullen* [1951] 37 Cal.2d at p. 625 [234 P.2d 1]; *People* v. *Quicke* (1969) 71 Cal.2d 502, 521 [78 Cal.Rptr. 683, 455 P.2d 787].) The corpus delicti rule arose from judicial concern that false confessions would lead to unjust convictions. [Citation.] Today's judicial retention of the rule reflects the continued fear that confessions may be the result of either improper police activity or the mental

---

[5]In another case (predating *Harris*), our Supreme Court opined that "the probable aim of the voters in adopting section 28(d)" was "abrogating *judicial* decisions which had required the exclusion of relevant evidence solely to deter police misconduct in violation of a suspect's constitutional rights under the state Constitution"—that is, "to dispense with exclusionary rules derived solely from the state Constitution." (*People* v. *May* (1988) 44 Cal.3d 309, 318 [243 Cal.Rptr. 369, 748 P.2d 307].) The broader interpretation given the RTE by *Harris* (as compared with and to the interpretation suggested by *May*) is certainly more consistent with the actual language of the RTE. Nothing in the wording of the RTE itself suggests that its reach is limited to "exclusionary rules derived solely from the state Constitution."

instability of the accused, and the recognition that juries are likely to accept confessions uncritically. [Citation.]" (See also Crisera, at pp. 1591-1592.) The corpus delicti rule is a prophylactic remedy, protecting the mentally unstable "confessor" from herself or himself and against the earlier mentioned inclination of jurors to believe a confession without conducting a close factual analysis of its trustworthiness.

For the foregoing reasons, I conclude that the corpus delicti rule has been abrogated by the RTE.

The question remains: If the judicially created California corpus delicti rule has been abrogated, what remains in its place? The answer seems clear: Nothing. There simply is no underlying *federal constitutional principle* requiring a rule of corroboration or proof of the corpus delicti which would preclude a confession and/or an admission from being admitted into evidence as direct proof of the charges brought against the criminal defendant.[6]

The general message of the RTE seems beyond argument: The wisdom *vel non* of adopting certain exclusionary rules of evidence has been taken from the hands of the judiciary and placed in the hands of the Legislature. The California Legislature, to date, has not seen fit (and, in all fairness, has not been shown the need) to adopt, pursuant to the two-thirds voting requirement of the RTE, a rule of evidence restricting the admissibility of confessions or admissions in order to protect against the potential of false confessions and unjust convictions. In my view, such an exclusionary rule, whether labeled a corpus delicti rule or a corroboration rule, is a reflection of literally centuries of wisdom accumulated by our judiciary and its historical antecedents to the effect that uncorroborated confessions and/or admissions are, in certain instances, untrustworthy and unreliable.

I encourage our Legislature, in light of the abrogation of California's corpus delicti rule by the RTE, to consider and enact in its stead a meaningful and workable exclusionary rule of evidence to assure the admissibility of only reliable confessions. It may wish to start by looking at the federal rule, which rule recently has been critically analyzed by the majority in *U.S.* v. *Lopez-Alvarez* (9th Cir. 1992) 970 F.2d 583, 592, with the following conclusion: "To summarize, under our reading of *Opper* and *Wong Sun*, the corroboration requirement is two-pronged: first, although the state need not introduce independent evidence of the *corpus delicti* in conformance with the traditional test, it must introduce sufficient evidence to establish that the

---

[6]There are, of course, constitutional principles which preclude the admission of *coerced* (or otherwise "infirm") confessions and/or admissions for such purposes—but these principles provide protections which are apart from those provided by the corpus delicti rule.

criminal conduct at the core of the offense has occurred. Second, it must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable. Only when both these prongs are satisfied will a jury be 'sufficiently justified' in believing the truth of a criminal admission; only then will the evidence be deemed sufficient in a case in which the conviction depends in part on such admission." (See also Crisera, at pp. 1594-1597.)