Filed 11/4/14  P. v. Dearwester CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANK LEE DEARWESTER,<br><br>Defendant and Appellant. | C074293<br><br>(Super. Ct. No. 11F02261) |

Over two years, defendant Frank Lee Dearwester sexually molested H., who was the teenage daughter of his girlfriend.  The molests occurred while defendant lived with H. and her mother in the mother's house and began a few weeks after defendant caught H. watching Internet pornography.  Defendant orally copulated H., had her orally copulate him, touched her breasts with his hands and mouth, and forced her to have intercourse with him.  H. eventually told friends about the molests in response to a friend's concern that H. was cutting herself.  H. then made pretext phone calls to defendant in which she alleged she was pregnant.  Defendant said "it's impossible"

because he "had a vasectomy," and told H., "[t]here's nothing to be scared about" and he loved her. After defendant was arrested, he approached fellow inmate William McFadden in jail. Defendant brought up that McFadden's nickname was shooter and McFadden was "like some hit man or something." He said he wanted a little girl named H. killed. He drew two maps with directions to the home and wrote down a physical description of H. and a schedule of times when H. would be home. He "want[ed] to get out" and for him to "come home" he needed to have H. killed. He offered McFadden $4,000 to murder H. and then said he could give him more when he came home.

A jury found defendant guilty of nine lewd or lascivious acts on H., one lewd or lascivious act on H. by touching H.'s breasts using force or duress, and one instance of soliciting H.'s murder.[1] The court sentenced defendant to 32 years in prison with 946 days of presentence credit (823 days of actual credit plus 123 days of conduct credit). The court awarded the mother $2,077.25 in restitution for relocation expenses.

On appeal, defendant contends the court erred in instructing the jury, in sentencing him, in ordering restitution, and in calculating his presentence credits. He also contends his counsel was ineffective. We find defendant's alleged errors invited or forfeited and reject his ineffectiveness claims. We do agree that defendant is entitled to one extra day of actual credit and modify the judgment accordingly.

---

[1] Among other things, the jury found defendant not guilty of committing a lewd act against his daughter C., not guilty of the lesser included offense of battery against C., and not guilty of soliciting a second inmate, James Peters, to kill H.

DISCUSSION

I

*The Doctrine Of Invited Error Precludes Defendant From Challenging*
*The Alleged Error Of Failure To Give An Instruction On A Lesser Included Offense*
*To Touching H.'s Breasts Using Force Or Duress*

Defendant was charged with touching H.'s breasts with his hand by force or duress. Defendant claims the court erred by not instructing on the lesser included offense of a lewd act without force or duress.

The People respond that defendant invited the error, precluding defendant from challenging this alleged error on appeal. We agree with the People.

"Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212; *People v. Barton* (1995) 12 Cal.4th 186, 198.) " 'The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given.' " (*People v. Eilers* (1991) 231 Cal.App.3d 288, 295, fn. 4.) Nevertheless, the trial court's error in not instructing on a lesser included offense " [can]not be relied upon by the defendant to justify a reversal because the commission of those errors ha[s] been 'invited' by the defendant himself." (*Id*. at p. 295.) "The . . . effect of the defendant's objection is to render that error 'invited' and therefore nonreversible." (*Id*. at pp. 295-296.)

The doctrine applies here. The court asked defense counsel if he was "requesting any other lessers besides the lesser for [C.] in Count Three?" Counsel responded, "No, I wasn't." The court added, "The way the Court saw this case[,] counsel can disagree with me if you wish, but I saw this with regard to [H.] as primarily a credibility issue." Defense counsel responded, "Right." The court continued, "Because the jury believes [H.] or they don't believe [H.]" [¶] With regard to [C.] it's a little bit different. The jury

3

could make a determination that in fact [C.] was touched, but it was a non-sexual touching in which case battery would seem to be the only alternative charge to the sexual charge that exist[s]." Defense counsel concluded, "That's the way I saw it."

Defense counsel's statement, "No, I wasn't" in response to the court asking if he was requesting any lessers was defense counsel's express objection to the court giving any other lessers. The court explained its view of the case as a credibility contest and either the jury believes H. or it does not. Defense counsel stated, "That's the way I saw it." Defense counsel's statement, "[t]hat's the way I saw it," demonstrates defense counsel's tactical reason for not wanting a lesser included instruction: defense counsel was gambling on an all-or-nothing verdict for this count. Either defendant touched H.'s breasts with force or he did not touch her at all.

These facts are comparable to those in *People v. Cooper* (1991) 53 Cal.3d 771. There, in a first degree murder case, defense counsel expressed that he did not believe there was sufficient evidence to instruct the jury on second degree murder, and he and his client opposed any such instruction because they did not want the jury to "compromise" on the lesser charge. (*Id*. at pp. 826-827.) That is similar to what we have here. By responding to the court, "That's the way I saw it," defense counsel was saying that he did not believe the evidence supported the lesser charge -- it was either touching by duress or no touching at all. In this light, defense counsel's decision not to request an instruction on the lesser -- even though each other charge of molestation by duress was matched with a lesser charge -- can be seen as a tactical decision to avoid any opportunity for the jury to reach a compromise verdict on this charge (as it appears the jury may have done on the other charges, given the opportunity to do so). [2]

---

[2]     The sex acts that were charged here with duress included nine counts of oral copulation and the one at-issue charge of touching H.'s breasts. The jury could not reach verdicts on the nine counts of oral copulation that included duress and instead found

4

Lastly, the purpose of the invited error doctrine is served by its application here. If defendant is correct on the merits that the trial court should have given the lesser instruction here and it was prejudicial, then defendant would be gaining a reversal on appeal made by an error (no lesser included instruction on the touching of H.'s breasts by duress) urged by him at trial.

## II

*The Trial Court's Alleged Error In Making The Finding That*
*Defendant Soliciting H.'s Murder Was To Dissuade A Witness Was Harmless*
*Beyond A Reasonable Doubt; Defense Counsel Was Not Ineffective*
*For Failing To Object To The Trial Court's Factual Finding*

Defendant contends the trial court violated the constitutional principles of *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] and *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403] by imposing a full consecutive six-year term, pursuant to Penal Code[3] section 1170.15, for his conviction of soliciting H.'s murder, based on the trial court having found the fact bringing him within that section rather than having the fact determined by a jury. Section 1170.15 requires a full term sentence (instead of one-third the midterm, or two years, under section 1170.1, subdivision (a)) when defendant solicited the murder to "dissuade a witness." Applying the Sixth Amendment to the United States Constitution, *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." (*Apprendi*, at p. 490 [147 L.Ed.2d at p. 455].) *Blakely* stated "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may

---

defendant guilty of nine alternative counts of simple lewd acts based on the same oral copulations, just without duress.

[3] All further section references are to the Penal Code unless otherwise indicated.

5

impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (*Blakely*, at p. 303 [159 L.Ed.2d at p. 413].)

The People argue that any error in the trial court making the finding that defendant solicited H.'s murder to dissuade a witness was harmless beyond a reasonable doubt. (See *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230 [this court holds that "*Blakel*y is subject to harmless error analysis," citing *Washington v. Recuenco* (2006) 548 U.S. 212 [165 L. Ed. 2d 466, 472] and applying the beyond-a-reasonable-doubt standard of review in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711]].)

We agree with the People that any error was harmless. The evidence overwhelmingly showed defendant solicited H.'s murder to dissuade a witness, H. Defendant approached McFadden while the two were in jail and defendant was awaiting trial in this case. Defendant said he wanted H. killed. He said that he "want[ed] to get out" and for him to "come home" he needed to have H. killed. He offered McFadden $4,000 to murder H. and then said he could give him more when he came home. These latter statements demonstrate defendant wanted H. killed so he would be released and believed that H.'s death would cause him to be released.[4] Thus, we are convinced beyond a reasonable doubt that a jury would have made the factual finding that defendant solicited H.'s murder to dissuade her.

Given our conclusion, we reject defendant's backup argument that his trial counsel was ineffective for failing to object to the trial court's factual finding. There are two prongs to an ineffective assistance of counsel argument: deficient performance and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 677 [80 L.Ed.2d 674, 687].) Without deciding if counsel was deficient in failing to object, there was no prejudice because of our conclusion the jury would have made the same factual finding. (*Id*. at p.

---

[4] Peters corroborated this motive when he testified that defendant asked him "hey, what happens if something happens to the victim, do they drop the case?"

697 [80 L.Ed.2d at p. 699] [an appellate court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"].)

III

*Defendant Forfeited His Challenge To The Restitution Order*
*By Failing To Raise The Same Challenge In The Trial Court;*
*Defense Counsel Was Not Ineffective For Failing To Object*
*Because The Relocation Expenses Were Verified*

The court awarded $2,077.25 in restitution to the mother. This was for relocation expenses she incurred when she and her family (including H.) moved out of the house where the molests occurred.

In a victim impact letter, the mother wrote that defendant's "crimes have also had a deep financial impact on me and my family. After finding out about the solicitation of murder, I felt it was necessary to move out of my home to protect myself and my family. It has now been a year and a half and we are still looking for a permanent home."

Whenever the defendant's conduct causes an economic loss to the victim, the court shall require that the defendant make direct restitution for "[e]xpenses incurred by an adult victim in relocating away from the defendant, including, but not limited to, deposits for utilities and telephone service, deposits for rental housing, temporary lodging and food expenses, clothing, and personal items. Expenses incurred pursuant to this section shall be verified by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim." (§ 1202.4, subd. (f)(3)(I).)

Defendant contends the restitution award was invalid because the court used the wrong legal standard, failing to find that relocation expenses were "verified by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim." (§ 1202.4,

7

subd. (f)(3)(I).)  Defendant has forfeited this contention by failing to raise this objection in the trial court.  (See, e.g., *People v. O'Neal* (2004) 122 Cal.App.4th 817, 820; *People v. Riccio* (1996) 42 Cal.App.4th 995, 1003.)   Before the court awarded this restitution, defense counsel objected as follows:  "I don't know that those are appropriate . . . .  These aren't counseling expenses.  These aren't lost wages."  The court asked defense counsel, "What is inappropriate about providing restitution to an individual who is presented with information that their life has been threatened and at a jury trial the jury concludes that, in fact, that is true beyond a reasonable doubt?"  Defense counsel responded, "[U]ltimately [defendant] was locked up.  There was no way he could allegedly . . . carry out these alleged threats."  "My objection has been noted for the record."  At no time did defendant object on the ground that the court failed to find that relocation expenses were verified.  "[D]efendant's failure to make a timely and specific objection on the ground he now raises forfeits the claim on appeal."  (*People v. Pearson* (2013) 56 Cal.4th 393, 416.)

We turn then to defendant's backup argument that his trial counsel was ineffective for failing to object to the restitution order on the ground that the court did not find that the restitution was verified.  Counsel was not deficient in failing to object because the expenses *were* verified and, therefore, counsel could have decided that there was no reason to object to the lack of a specific finding.  In the probation report, the detective from the Sacramento County Sheriff's Department who investigated the solicitation of murder stated that "because of [the detective's] detailed knowledge of the case and the victim and her family, [the detective] knew the information repeated by the inmate [who was solicited to murder H.] was accurate and complete enough to easily find and track the intended victim."  Indeed, when defendant solicited H.'s murder, he drew two maps with directions to the home and wrote down a physical description of H. and a schedule of times when she would be home.  The detective's statements in the probation report were sufficient verification that the relocation expenses were necessary for H.'s safety.

IV

*Defendant Is Entitled To One More Day Of Actual Credit*

Defendant contends he was entitled to one more day of actual credit.  We agree. The court gave defendant 946 days of credit (823 days of actual credit plus 123 days of conduct credit).  This was one less day of actual credit than he earned.  Defendant was arrested on April 10, 2011, and remained incarcerated through sentencing on July 11, 2013, which is 824 days.  We will modify the judgment accordingly.

DISPOSITION

The judgment is modified to award defendant 947 days of total credit (824 days of actual credit plus 123 days of conduct credit).  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


                                              ROBIE                , Acting P. J.



We concur:


        BUTZ                , J.



        MURRAY            , J.




9